

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE
2008 JAN -2 AM 8:58

# IN THE UNITED STATES DISTRICT COURT OF THE DISTRICT OF DELAWARE

Roland C. Anderson,
Plaintiff

vs. C.A. NO. 05-877-JFF

General Motors Corporation,
Defendant

## Motion to Court for a Rule 55-R. 56 and Third Circuit Court-R. 27 Motions R. 1.3

Reason the Defendants was served with a Motion for Judgment as a matter of law on/or way back on June 28, 2007, Rule 55. Clearly states (a) omitted (Ex. A) (b) Judgment. When a party against whom a judgment for affirmative relief is sought, has failed to appear, plead or otherwise defend as provided by these rules. Judgment by default may be entered as follows. The party entitled to a judgment by default shall be entered. See Rule 55 attached.

Also See R. 56, expiration of 20 days from commencement of the action which was filed on June 28, 2007, and there has not been a respond yet to my motions.

The Third Circuit Court also state under (File A P. 27 motion). Whereas FRAP 27(3), motion to response. A time to file. Any party may file a response to a motion under Rule 27(a)(2), governs it contents. There motion must be filed no later than eight (8) days after Service of Motion unless the Court shortens or extends the time, but a motion authorized by R. 8, 9, 18, or 41 may be granted before the eight (8) day period runs only if the Court gives reasonable notice to the parties that it intends to act sooner. FRAP 27 Motion.

Also see FRAP 27-B, request for relief was done on June 28, 2007, but Defendant fail to file a response within eight (8) days. Rule of the Third Circuit Court, copy attached, FRAP 27 Motions (b) Ex. B.

Also see FRAP 15, review or enforcement of an agency order, how obtained intervention attached. This was also my application, back in June 28, 2007, FRAP 15(b) (2) states the following – (2) within 20 days after application for enforcement is filed the respondent must serve on the applicant our answer to the application and file it with clerk.

If respondent fails to answer in time, the Court will enter judgment for relief requested.

Defendant who did not plead affirmative defense and answer cannot raise it on appeal. See § case law Jeffrey v. Seven Seventeen Corp, 461 A2d 1009 Del. 1983.

Rule 16.5 request for extension of deadlines must be made by a Motion or stipulation prior to the (case) before the 20 day expiration of the date deadline. So therefore, G.M. Defendant missed their deadline and never filed a Rule 16.5 according to Docket sheet.

Whereas in respect to this court and the rules of this Court and Court of Appeal, R. FRAP 15(b)(2) and Rule 55 of rule 77.2 Order and Judgment by the Clerk Rule 77.2 (4) order entering default for failure to plead or otherwise defend in accordance with Fed. R. Civ. P. 55. Your Honor, the motion was filed on June 28, 2007. The deadline has already passed, making their response a moot point. See Jeffrey v. Seven Seventeen Corp. 461 a2d 1009 De. 1983 as well as R. 55, otherwise failure to defend on time and without motion for extension with the Rules of this Court and law, plus Court cost should apply under 10 Del. C § 5106 and subsection (d) of this rule IN RE Trust u/a McKinley, A.2d (Del. Ch. December 31, 2002). Also R. 1.3 or what this Court deem fit for the Motion of Judgment filed back on June 28, 2007, and no response nor extension for answer to judgment in violation of say rules of govern this Court previously stated.

III. Pleading and Motions

Rule 7.1.2 Briefs when Required on Schedule

A party filing a Motion shall not file a Notice of said Motion unless otherwise ordered by the Court. The briefing and affidavit schedule for presentation of all Motions shall be: (1) The open brief and accompanying affidavit(s) shall be served and filed on the date of the filing of the Motion. (2) The answer brief and accompanying affidavit(s) shall be served and filed no later than ten (10) days. After service and filing of the open brief or motion, Defendant had no later then ten (10) days to respond that was giving notices from the Court (e-mail) according to Docket and proof of service by the Plaintiff as well. This would also come under R. 55.

Also see R. 1.1 scope of the rules – (the former rules shall govern); R. 1.1(e) Rules of Construction United States Code, Title 1, Section 1 to 5 shall as for applicable, govern the construction of these rules. See § Rule 1.1/1.2 Rules. G.M. clearly missed deadline to respond to judgment filed on June 28, 2007, and had ten (10) days according to R. 7.1. Also Rule 55 twenty (20) day to respond, but failed to reply to Rules and R. 1.1/R.1.2 see attached.

Thank you,

Roland C. Anderson
113 Lloyd Street
Wilmington, DE 19809

Certificate of Services
To Honorable Judge Farnan, Jr.
Michael William
Michael Basenkell
300 Delaware Ave., Ste. 210
Wilmington, DE 19801

# IN THE UNITED STATES DISTRICT COURT OF THE DISTRICT OF DELAWARE

Roland C. Anderson, :
Plaintiff :
:
vs. : **C.A. NO. 05-877-JFF**
:
General Motors Corporation, :
Defendant :
:

**ROLAND C. ANDERSON MOTION FOR**
**SUMMARY JUDGEMENT**/with Evidence / Rule And CASE LAW Attach for R.56

Pursuant to Federal Rule 56, Roland C. Anderson moves for summary Judgment in its favor and against General Motors Corporation on all counts. In my complaint there are genuine issues of material facts and I am entitled to judgment. As a matter of law, as more fully set forth in Roland Anderson in support of it is Motion for Summary judgment of the record, reflects that the Plaintiff can establish a primary facile case that my civil rights were violated because of my race, age and other protected status. Based on this retaliation charge found by the Department of Labor, Ex. A, which clearly states on its face – G.M. violated the protected status – Dol found that G.M. violated – Count 1 Del, please be advised that the information you have provided comes under the provision of the Privacy Act of 1974, public law 93-579, Ex. B. (This not A Doubtful CASE) Finding By D.O.L

Your Honor clearly Del. Found G.M. had violated this protection act. Clearly for G.M. lawyer to say it was not established a prima facie case is truly misleading. This is the law, see counts 1, 2, 3, 4, and 5.

Your Honor, clearly G.M. list me as a temporary and listed me as terminated and not laid off after working as an hourly employee. Plus thereafter, G.M. gave false information about job status which indeed affected my union benefits. I have proof I was an hourly (Ex. B) worker, but G.M. give false information. This is violation of retaliation and under protected class. See Dol. Charge No. FEPA 06020096W also attached. See Exhibit (6) my deposition (Ex. C).

Count 1: Please advise that the information you have provided comes under the provision of the Privacy Act of 1974, Public Law 93-579 (and others).

Count 2: Ex. B – Charge of discrimination – This firm is affected by the Privacy Act of 1974, charge number FEPA-06020096W (and EEOC if applicable). Date discrimination took place (June 1, 1982). (Charging protected class: Retaliation), latest December 19, 2005. Adverse employment action: Term and condition; benefits brief state of allegation – see attached Ex. B.

Count 3: Ex. B – See evidence I was an hourly worker and laid off and acquired my 90 days under previous agreement.

Count 4: Ex. C – Letter from Julie Klein Cutler, administrator, discrimination program. Julie Klein Cutler's letter states the following:

1. Verified charge of discrimination – filed against the above named respondent under Title VII, DE Discrimination Employment Act. See letter attached Ex. C (Rule of Discovery).

Count 5: Letter from Dianna L. Schley –Federal Investigator. GM gave false information about my job status. GM states I was terminated, also a temporary.

Also see witness list for pre-trial/trial if needed. List attached Ex. D

G.M. stated that I can't established a prima facie case of discrimination or retaliation Your Honor – their rule and protection case, which was already established by Del.. During their investigation and result, see Exhibit 4, 5, 6, 9 for G.M. to say these remark are again untrue and misleading under these protection class. I am entitled to summary judgment of matter of law; based on it discriminatory reason for its action.

In further support of this motion, Roland C. Anderson exhibits as follows:

1.    Deposition of Roland Anderson (Ex. E)

2.    Del. Finding under protection class Ex. A

3.    Judge McKelvies April 7, 1993, order (only deal with recall rights not for retaliation. See page Ex. 2 (page 2), (Ex. F) (statement).

4.    Affidavit of Diane Graham, case no. 06-066 (Ex. G). The Court clearly stated it will not accept pleading in case no. 06-669-JJF. G.M. in violation of order. Ex. H order, See Judge's Order attached (Ex. H). Plus Your Honor this case is about retaliation a prima fac i.e. case, only. See Del. Finding not recall and list of seniority, (Case)

Court clearly stated it would not or hereafter, Court pleading and documents shall be filed only. In civil Action No. 05-877-JJF deals with retaliation and discrimination in which it has been already investigated by Del. Finding and was found to be a violation of under the provision of the Privacy Act of 1974, public law 93-579 (and others). See Del finding.

Extension to discovery and summary judgment due no later than November 8, 2007, G.M. missed the deadline. I am filing this Motion for Summary Judgment under R. 56.55. See Docket sheet attached. Deadline for Motion for Summary Judgment no later than November 8, 2007, attached Ex. D.

Ex B

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Philadelphia District Office**

21 South 5th Street, Suite
Philadelphia, PA 19106-
(215) 440-
TTY (215) 440-
FAX (215) 440-2632, 2848 & 2

September 8, 2005

Roland Anderson
113 Lloyd Street
Wilmington, DE 19804

Re: Anderson v. General Motors
EEOC Charge Number 170-2005-01768

Dear Mr. Anderson:

The information and evidence submitted by all parties regarding the above referenced charge has been reviewed. In order for the Commission to issue a determination that there is reasonable cause to believe that you were discriminated against, the record of evidence would have to support a conclusion that the Respondent took this into account in its actions. The information submitted by all parties does not indicate that there is a likelihood that continued investigation would result in obtaining evidence which would lead to a finding of a violation.

You allege that you were denied an application in March 2005, but learned approximately one month later, through various individuals, that Respondent filled some vacancies. You believe you were not given an application in retaliation for previous charge filing (170-1991-01375, 170-2000-01320, 17C-2004-00615 and 170-2003-00027), and because of your race, black and age, 52. In addition to these allegations, you believe you were denied benefits that you were entitled to because Respondent listed you as "terminated" and not "laid off" after working for Respondent previously.

Respondent agrees that you were an employee during the following periods: August 31, 1981, to September 21, 1981, and again from June 25, 1982 to October 1, 1982. According to the Collective Bargaining Agreement you did not reach a status of an employee, but remained listed as a temporary employee because:

"...employees shall be regarded as temporary employees until their names have been placed on the seniority list." Further, "Employees may acquire seniority by working 90 days during a period of six continuous months in which event the employee's seniority will date back 90 days from the date seniority is acquired."

Since you did not work within a period of six continuous months, you did not qualify as an employee with seniority but listed as a temporary employee. Therefore you do not have access to any accumulated benefits.

DEPOSITION
EXHIBIT

Ex B

Regarding your hiring issue, Respondent states that no workers have been hired at that site since October 1999, indicating that there were no job opportunities at the time of your inquiry in March 2005.

This is to inform you that it will be recommended that the EEOC dismiss the charge. If the charge is dismissed, the Commission will issue a decision stating that it is unable to conclude that the information obtained establishes a violation of the statute. The decision would not certify that the Respondent is in compliance with the statute. The Dismissal and Notice of Rights which will be sent to you will allow you to file a private suit, if you want to pursue this matter further.

Sincerely,

Dianna I. Schley
Federal Investigator

FAX 302-654-

EXB

STATE OF DELAWARE DEPARTMENT OF LABOR
DIVISION OF INDUSTRIAL AFFAIRS
DIVISION OF INDUSTRIAL AFFAIRS
4425 NORTH MARKET STREET
WILMINGTON, DE 19802
(302) 761-8200/ FAX: (302) 761-6601

## *PRIVACY ACT STATEMENT*

Dear Charging Party:

1. Please be advised that the information you have provided comes under the provisions of the Privacy Act of 1974, Public Law 93-579.

2. The authority for requesting the personal information contained herein are provided in 42 U.S.C. 2000e(9), 29 U.S.C. 201, 29 U.S.C. 621; and 19 Del. C. § 712(c).

3. The principal purpose of obtaining this information is to complete the Charge of Discrimination which will be verified by the Charging Party and served upon the Respondent. In some instances, witnesses' sworn statements may become relevant to determining the Charge of Discrimination.

4. These forms are used to initiate and investigate the Charge of Discrimination under the laws and to impeach or substantiate a witness's testimony.

5. Completion of the Verified Charge of Discrimination form is mandatory to initiate and process a Charge of Discrimination. Providing additional information on the verification form is optional. Failure to provide additional information has no effect on Department of Labor's ability to file and process the Charge of Discrimination.

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974

ENTER CHARGE NUMBER

☐ FEPA 06020096W

☐ EEOC 17CA600275

Delaware Department of Labor and EEOC (if applicable)

NAME (Indicate Mr., Mrs., Ms): Roland Anderson

HOME TELEPHONE NO. (Include Area Code): (302) 994-0914

STREET ADDRESS: 113 Lloyd Street

CITY, STATE AND ZIP CODE: Wilmington DE 19804

COUNTY: NCC

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCA GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one, list below.)*

NAME: General Motors Corporation

NO. OF EMPLOYEES OR MEMBERS: 100+

TELEPHONE NUMBER (Incl. Area Code): (713) 780-8056

STREET ADDRESS / CITY, STATE AND ZIP CODE: 1616 S. Voss, 10th Floor, Houston, TX 77057 ATT: Elmer C. Jackson, III, General Director, GM Employment Relations Center of Expertise

NAME:

TELEPHONE NUMBER (Include Area Code):

STREET ADDRESS:

CITY, STATE AND ZIP CODE:

☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN ☐ AGE

☒ RETALIATION ☐ DISABILITY ☐ OTHER (Specify)

DATE DISCRIMINATION TOOK PLACE

EARLIEST 6/1/1982

LATEST 12/19/2005

☒ CONTINUING ACTION

DEPOSITION EXHIBIT Anderson 6 ap 10/3/...

THE PARTICULARS ARE (If additional space is needed, attached extra sheet(s)):

Jurisdiction: Charging Party was employed with Respondent as a Body Shop/Production Technician since 1982 in Wilmington, DE, ending 10/82.

Charging Party's protected class: Retaliation

Adverse employment action: Terms and Conditions; Benefits

Brief statement of allegations: Charging Party alleges that R retaliated against him because of negative statements made regarding his job status dur an EEOC investigation. Consequently, Charging Party claims that Respondent falsely stated that he was a temporary employee instead of a permane employee which has affected his union benefits. Charging Party claims that he was laid off as an hourly employee and Respondent hired white worke without contacting him first. Thereafter, Charging Party filed a racial discrimination charge which resulted in false information given to EEOC about his status as a temporary worker. Ultimately, Charging Party claims that this is further evidence that Respondent's information is a form of retalialtion bec it affect his current benefit status.

Respondent's explanation: Charging Party claims that Respondent has not given a reasonable explanation for placing him as a temporary worker after investigation, while he previous worked as a hourly worker under a previous agreement.

Applicable law(s): Title VII of the Civil Rights Act of 1964, as amended; DE Discrimination in Employment Act

Comparator(s) or other specific reason(s) for alleging discrimination: Charging Party claims that Respondent's information during an EEOC investigation has revealed further adverse action in the form of retaliation because the information has negatively affected his union benefit status. Charging Party claims that during a legal preceeding, Dave Boyle, Respondent's EEOC Representative gave an affadavit that Charging Party was an hourly worker and under agreement acquired certain seniority rights under the previous collective bargaining agreement..

Additional information and verification of these facts are provided by the attached Verification.

☒ I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

SIGNATURE OF COMPLAINANT: Roland C. Anderson 2-14-06

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

DDOL FORM B-05 REV 01-05

PREVIOUS EDITIONS OF THIS FORM ARE OBSOLETE AND MUST NOT BE USED

Ex D

A. But EEOC response to a complaint clearly shows I was an hourly worker, acquired my 90 days and under a previous agreement, see proof Ex. B from affidavit of David L. Bull Ex. B.

These witnesses are willing to be a witness for trial/ pre-trial if need be.

**Witness List**

Brenda Sams – DOL – investigator for this charge NO. 06020096W

Dave I. Bull – His affidavit to show I was an hourly worker and not a temporary or terminated, but was laid off.

Julie Klein Cutler, administrator (DOL)

Dianna I. Schley – EEOC – Federal Investigator

Willie Demouchette – EEO Consultant (Exhibits from GM job history)

David Johnstone – consultant from General Motors (letter – position statement)

Members from ACLU

Terry Tydnall – party to GM

Nancy Smith, member from union

Dr. Olor

Dennis Homond chairperson for union – GM

Thank you
Roland P. Anderson

Date
10-11-07

/12 P2

employed for 90 days, as required under the terms of the applicable Collective Bargaining Agreement. Plaintiff was rehired on June 25, 1982 and was again laid off in October 1982. Under the Agreement he acquired certain seniority rights, including a right to be recalled to employment but these rights expired on a "time for time" basis. Having been employed for only four months, Plaintiff's right to be recalled, as well as any other seniority rights, expired four months after he was laid off, that is, by February 1983.

3. G.M. has not hired any permanent employees for manufacturing assembly work since 1987. During this period of time, all persons recalled to work were laid off employees who had seniority rights and a right to be recalled before persons without such rights were considered for employment. Telephone inquiries concerning employment opportunities have received the response, "We are not issuing applications nor do we expect any opportunities in the near future."

4. Separate and apart from the matter of recalling former employees with seniority rights, there was a brief period when applications for temporary summer employment were processed. On May 13, 1992, 31 temporary employees were hired, but, as it turned out, they only worked for two weeks before being laid off. This took place long after Plaintiff had filed his complaint with the E.E.O.C. on or about December 27, 1991. Former employees who still have seniority rights do not have a right to recall to temporary summer employment.

5. G.M. has no record of receipt of a job application by Plaintiff during 1991, or at any time after his seniority rights expired in 1983. Plaintiff alleged,

before the E.E.O.C., that he sought employment from G.M. on June 5 and November 4, 1991 and was told that G.M. "was not hiring". If Plaintiff made these contacts on the dates indicated, he is correct in stating the response he would have received; as stated above, G.M. was not considering or accepting applications for new employment at that time. The list of former employees with seniority rights had not been exhausted and the Collective Bargaining Agreement barred consideration of any person, such as Plaintiff, who had no seniority rights.

6. I was responsible for preparation and submission of G.M.'s response to Plaintiff's complaint as filed with the E.E.O.C. Attached is a copy of that response.

7. G.M.'s Wilmington plant was closed from Saturday, July 18 through Sunday, August 2, 1992. Plaintiff's complaint in this case was served on Defendant by ordinary mail. It appears to have been received during the time the plant was closed and there was no one on duty to give any attention to such mail. All of the mail received during the close down was processed following the reopening of the plant on Monday, August 3, 1992.

David I. Bull

David I. Bull

Sworn to and subscribed before me the day and year first above written.

Constance L. McKenna-Martone

Notary Public

My Commission Expires: Nov, 1993





STATE OF DELAWARE DEPARTMENT OF LABOR
DIVISION OF INDUSTRIAL AFFAIRS
4425 NORTH MARKET STREET
WILMINGTON, DE 19802
(302) 761-8200/ FAX: (302) 761-6601

**CERTIFIED MAIL - RETURN RECEIPT REQUESTED**

February 22, 2006

Personnel Manager
**General Motors Corporation**
1616 S. Voss Road, 10th Floor
Houston, TX 77057

RE: **Anderson v. General Motors Corporation, Case No: 06020096W/17CA600275**

Dear Respondent:

Enclosed please find a **NOTICE OF CHARGE OF DISCRIMINATION**, along with the following documents:

1. Verified Charge of Discrimination filed against the above-named Respondent;
2. Mediation questionnaire;
3. Copy of 19 Del. Code § 712 (c), describing the administrative process.

Pursuant to 19 Del. Code § 712 (c), the named Respondent has an opportunity at this time to "file an answer **within twenty (20) days of the receipt of the Charge of Discrimination**, certifying that a copy of the answer was mailed to the Charging Party at the address provided." **If you are interested in mediation, you do not need to file an answer at this time. If you elect this option you must check the appropriate provision of the enclosed Invitation to Engage in Mediation form and return it to us in lieu of your answer.**

This Charge of Discrimination has been filed under the following law(s), and as indicated by the case numbers referenced above.

- ☒ Title VII
- ☐ ADA
- ☐ ADEA
- ☒ DE Discrimination in Employment Act
- ☐ DE Handicapped Persons Employment Protection Act

We anticipate your full cooperation. If you intend to retain legal representation at any time throughout this process, please have your attorney enter his or her appearance so that future contact will be made through him or her.

Julie Cutler

Julie Klein Cutler, Administrator,
Discrimination Program

cc: Charging Party (w/o enclosures)

10

DOL Form B-10W : 01/06



DEPOSITION EXHIBIT PENGAD 800-631-6989 Andrea 8 EP 10/24/07

*The U.S. Equal Employment Opportunity Commission*

# Retaliation

An employer may not fire, demote, harass or otherwise "retaliate" against an individual for filing a charge of discrimination, participating in a discrimination proceeding, or otherwise opposing discrimination. The same laws that prohibit discrimination based on race, color, sex, religion, national origin, age, and disability, as well as wage differences between men and women performing substantially equal work, also prohibit retaliation against individuals who oppose unlawful discrimination or participate in an employment discrimination proceeding.

In addition to the protections against retaliation that are included in all of the laws enforced by EEOC, the Americans with Disabilities Act (ADA) also protects individuals from coercion, intimidation, threat, harassment, or interference in their exercise of their own rights or their encouragement of someone else's exercise of rights granted by the ADA.

There are three main terms that are used to describe retaliation. Retaliation occurs when an employer, employment agency, or labor organization takes an **adverse action** against a **covered individual** because he or she engaged in a **protected activity**. These three terms are described below.

**Adverse Action**

An adverse action is an action taken to try to keep someone from opposing a discriminatory practice, or from participating in an employment discrimination proceeding. Examples of adverse actions include:

- employment actions such as termination, refusal to hire, and denial of promotion,
- other actions affecting employment such as threats, unjustified negative evaluations, unjustified negative references, or increased surveillance, and
- any other action such as an assault or unfounded civil or criminal charges that are likely to deter reasonable people from pursuing their rights.

Adverse actions do not include petty slights and annoyances, such as stray negative comments in an otherwise positive or neutral evaluation, "snubbing" a colleague, or negative comments that are justified by an employee's poor work performance or history.

Even if the prior protected activity alleged wrongdoing by a different employer, retaliatory adverse actions are unlawful. For example, it is unlawful for a worker's current employer to retaliate against him for pursuing an EEO charge against a former employer.

Of course, employees are not excused from continuing to perform their jobs or follow their

## Need more information?

The law:

- Title VII of the Civil Rights Act

The regulations:

- 29 C.F.R Part 1604.11

Enforcement guidances and policy documents:

- EEOC Compliance Manual, Section 8, Retaliation (May 20, 1998)
- EEOC Compliance Manual, Section 2, Threshold Issues (May 12, 2000)

## You may also be interested in:

- How to File a Charge of Employment Discrimination
- Mediation at EEOC
- Training and Outreach
- Information for Small Employers

your Honor - more proof - I was Here As Hourly Employee From G. M. Benefits & Services center attach. and NOT, A temporary, NOR was I Terminated. Like GM stated - (G. M is Tring to mislead the court).



GM Benefits & Services Center
gmbenefits.com
1-800-489-4646
International Access
Dial AT&T Direct® Access Code, then
877-833-9900
TTY Service for Hearing or Speech Impaired
1-877-347-5225

...ber 5, 2007

...OLAND C ANDERSON
...13 LLOYD STREET
WILMINGTON, DE 198042821

RE: Hourly-Rate Employees Pension Plan "the Plan"

ROLAND C ANDERSON:

GM Benefits & Services Center
P.O. Box 770003
Cincinnati, OH 45277-0070

**The Trustee of the UAW-GM Legal Services Plan, who accumulates assets through which Legal Services Plan benefits are provided, is:**

Comerica N.A.
Fort & Washington Boulevard
Detroit, Michigan 48226

**The Trustee of the Health Care Program, who accumulates assets through which Health Care Program benefits are provided, is:**

State Street Bank and Trust Company
Master Trust Division
One Enterprise Drive
North Quincy, MA 02171

Once you become A member (90 days,) AS Require),

## Collective Bargaining Agreement

The Hourly-Rate Employees Pension Plan, Life and Disability Benefits Program, Health Care Program, Supplemental Unemployment Benefit Plan, Guaranteed Income Stream Benefit Program, Profit Sharing Plan, Personal Savings Plan, and the UAW-GM Legal Services Plan, each as described in this booklet, are maintained pursuant to a collective bargaining agreement with the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America. A copy of the agreement may be obtained upon your written request to the Plan Administrator.

See Dave Bull - Affidavit from The Record of General motor -

Ex B

Ex B 11

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ROLAND C. ANDERSON, )
Plaintiff, )
v. ) C.A. No. 92-335-SLR
GENERAL MOTORS, BOXWOOD ROAD, WILMINGTON, DELAWARE 19804, )
Defendant. )

AFFIDAVIT OF DAVID I. BULL

STATE OF DELAWARE )
) SS:
COUNTY OF NEW CASTLE )

DEPOSITION EXHIBIT PENGAD 800-631-6989 Anderson 10 10/24/07

On this 16th day of September 1992 personally appeared before me the undersigned Notary Public, David I. Bull, who did depose and say:

1. I am an employee of General Motors Corporation at its Boxwood Road plant, Wilmington, Delaware. I hold the position of supervisor, Equal Employment Opportunity and, as such, I have investigated the subject matter of the Complaint filed by Roland C. Anderson in the above-captioned civil action and the same matter when it was before the Equal Employment Opportunity Commission. I am authorized to make this Affidavit on behalf of Defendant, General Motors Corporation.

2. The records of General Motors show that Plaintiff was employed as an hourly worker from August 31 to September 21, 1981, when he was laid off. During this period of time, he acquired no seniority rights, because he was not

(16) Pg. I

Ex H

in the Consolidated Action.

5. Hereafter, Court pleadings and documents shall be filed only in Civil Action No. 05-877-JJF. The Court will not accept pleadings filed in Civil Action No. 06-669-JJF.

Joseph J. Farnan, Jr.
UNITED STATES DISTRICT JUDGE

I would like to clarify my answer to the attorney's question on page 37.

Q. So all of this last part that I read also because of my age to believe the Defendant listed me as terminated and this retaliatory stuff deals with your lay-off back in 1982?

A. That's correct.

This was just one part of retaliation reasons I was lay-off out of seniority and race, but the records did not reflect the terminated part, which was back in September of 2005. G.M. listed me as temporary and terminated.

Their part of retaliatory reason is that it was just retaliatory recall rights and seniority only. No new charge of retaliatory of terminated and temporary. See charges back in 1982 for recall seniority.

The attorney mislead and knowingly new terminated was not mentioned until September 2005. See evidence from EEOC attached.

I was just answering to the second part of the retaliatory stuff back in 1982, record show no termination back in 1982. See record of former suit attached plus no where until September 2005. Investigation by EEOC of me being listed as terminated or temporary employee. As you can see on page 10, para. 37 will explain and show.

Q. By G.M. and those document that you alleged should have said one thing, should have said lay-off, but said terminated were created back in 1982?

Your Honor clearly G.M. is trying again to mislead in violation of Rule 3.4. Also fail to obey this Court rules and law in 1982 deals with 06-669 was prohibited order dated. See copy of order.

A. Clearly defense for my answer which states the following, page. 10 para. 37.

Well let me get this straight. I know where you are coming from with that. I am going to say this to you. I have good documents here. This is a retaliation situation. I didn't know anything about it until the April 15th investigation from the EEOC, this pops up.

Q. Sir?

A. Otherwise I would have done something about that a long time ago. Your Honor, G.M. can not violate the law, see R. 3.0.

names or anything. They just told me that they heard -- I asked them were they hiring they said from their recollection they were hiring. So that was it. That was the end of the conversation.
Q. Did any of those people work in personnel?
A. No, I don't think -- they worked on the line. They had uniforms and everything on. A bunch of them come off from lunch break.
Q. So on lunch break you see these people are going to the liquor store and buying beer and alcohol?
A. They do it or go to get a sandwich, you know, stuff like that.
Q. You don't remember the names of any of these individuals?
A. Well, no, because they was like people that -- they were just communicating, conversating. That's all that was.
Q. Okay. Then you say you were not given an application and was told the plant was not hiring. On or about April 15th, 2005 I learned from individuals that Respondent was hiring.
A. Mm-hmm.
Q. Who is it that told you in April 2005 that General Motors was hiring?

A. I told you, just people that you commonly meet. You don't have to know their names. They was saying they were hiring. I asked them were they hiring, just out of curiosity. I want to know if they were hiring.
I seen them coming in there, a bunch of them coming. I seen all these people. I said, "General Motors is hiring again?" And they said, "Yes. Friends got hired."
I don't know. I just took it from that point, there it is, where it is, what it is. I asked them some questions, like everyday people. Ask people questions, especially if you see like five of them coming into the stores and going different places. And I asked them were they hiring they said, yeah, they were hiring at that time, around that time.
Q. Okay. And again, none of those people worked in human resources, correct?
A. No, they didn't work in human resources.
Q. Your next sentence says, "Also because of my age 52, to believe the defendant listed me as terminated (actually I was laid off). It also has, had retaliatory effect on my being denied benefits to which I'm entitled."
What does that mean?

A. Okay. Now, when I belonged to the union at that particular time, in '82, now, certain benefits that a person is entitled to, such as a right to recall, a right to receive C sub and E sub benefits, if you are laid off prior to October the 1st, 1990, which I have the Delaware insurance commissioner is looking into that with Fidelity, because I was supposed to have got those benefits. But when they listed me as terminated or temporary employee, retaliated against me, all those benefits I was supposed to have got, pushed off the table, wiped off.
I was entitled under the collective bargaining agreement, because I worked at my 90 days, requested for that period of time, that when they retaliated, I lost all that. I couldn't get all of that.
Q. Okay.
A. And plus -- plus the right to be recalled.
See? I have rights. Like union benefits rights, when they did that, retaliated that, that destroyed all them rights, benefits.
Right now I'm fighting now with the federal -- I mean federal -- Fidelity situation now because the C sub and E sub that I was entitled to benefits. When you belong to a union, you get benefits.

And if you was a temporary or you got fired or terminated, you don't get none of that.
Q. Okay. Sir, are you done?
A. Yes.
Q. So all of this last part that I read, "Also because of my age, to believe the defendant listed me as terminated," and this retaliatory stuff deals with your layoff back in 1982?
A. That's correct.
Q. And all those documents that you allege should have said one thing, should have said "layoff" but said "terminated" were created back in 1982?
A. Well, let me get this straight. I know where you are coming from with that.
I'm going to say this to you. I have good documents, document here. This is a retaliation situation. I didn't know anything about it until the April the 15th investigation from the EEOC, this pops up.
Q. Sir --
A. Otherwise, I would have done something about that a long time ago.
Q. April 15th of what year?
A. April 15th of 2005.
Q. Now, sir, you realize you are under oath,

correct?
A. Yes, April the 15th, 2005.
Q. Sir, is it your testimony that these documents were changed or --
A. Altered, yes.
Q. In fact, you were given copies of these documents when you filed prior lawsuits, weren't you?
A. No. That's the -- you asked me the question. I'm going to answer your question, sir. That's the way -- I know where you are coming from.
But I'm going to tell you, and you are putting it the same way, category with them, these documents, when I prior filed these suits, there is affidavits sent to Judge Farnan from Dave Bull clearly under the circumstances states that I was an hour worker. You understand me?
So, therefore, none of this stuff was in there until April the 15th, after the EEOC did their investigation, and they found that I was listed as terminated, I was listed as they turn around and said I was a temporary employee.
Q. Sir --
A. I'm just saying --
Q. Let's stop for a minute because I don't want you

to commit perjury.
A. I'm not perjury.
Q. You understand that you filed prior lawsuits, correct?
A. That's correct.
Q. You understand that you have lost every one of those lawsuits, right?
A. Because of the time frame, sir.
Q. Yes or no?
A. Yes, because of the time frame.
Q. You also appealed these decisions through the union, correct?
A. Yeah.
Q. And you understand that there are written decisions from not only the local union, but the National Union and the NLRB? You understand that, correct?
A. Yes, but that --
Q. Yes, sir. Do you understand that?
A. Yes, I do understand that.
Q. Do you understand because you commented on the record in those cases about the very documents that you are speaking, so is it your testimony under oath to this Court that the first time you saw those documents was April the 15th, 2005? Yes or no?

A. Listen to me. Let me explain. I'm going to say the first time I've seen the documents that they said I was terminated and laid off was around -- after the investigation from EEOC.
Prior cases that you are referring to is stated from Dave Bull that I was an hourly worker. I was laid off. That's what I'm trying to tell you.
And the reason why they said that those cases were lost because it was time frame. But the information that you sent to them also reveals that your situation, your staff, your members committed perjury because the information that you sent them is incorrect from the information that Dave Bull and the records reflect that I was an hourly worker. Okay?
Q. Sir, what does it mean to be an hourly worker?
A. Hourly worker means that you get the full benefits of regular worker, hourly worker. Temporary workers don't get the benefits. That's as simple as that.
Q. That's your definition?
A. No. That's the records from the union.
Q. Sir, I'm trying to ask a simple question, and apparently we are going to go a different direction. I want to make sure that this record is clear. You have a

packet of documents that you brought here today, correct?
A. That's correct.
Q. I would like you to go into that packet and pull out the documents that you say you didn't see until April 15th of 2005.
A. Okay. Okay. First --
Q. Sir, please pull out the records you say you didn't see until 2005.
A. Okay. Cool. Here it is right here. September 2005 -- can I read something for the record, please?
Q. She has to mark this and it is going to become an exhibit.
A. Right. Thank you.
Q. She will give you back a copy before you leave.
A. Thank you.
Q. Are there any other documents in here you allege that you didn't know about until April of 2005?
A. April -- September 8th, 2005. That's what was investigated and that's what prevailed, the retaliation. That's when the retaliation came into effect, that information right there.
First of all, let me say something to you, sir. The one I was referring to you from Dave Bull clearly states from -- to the records, which is going to

be marked Exhibit B if you want, will clearly show that Mr. Dave Bull said -- never said that, that I was a temporary worker. Never said I was terminated. His information was sent to Judge Farnan, which is in here. Mark it as Exhibit B.

MR. WILLIAMS: Can you take out some exhibit stickers, please?

A. This is way back when I first filed the discrimination suit against General Motors. The records from General Motors shows that the plaintiff was employed as an hourly worker. Okay. Didn't say layoff or anything.

From August 31st to September 21st, 1981 when he was laid off is during that period of time he acquired no seniority rights because he was not employed for 90 days as required under the terms of the collective bargaining agreement.

Plaintiff was rehired on June the 25th, '82 and was again laid off in October of '82. Under the agreement, he acquired senior seniority rights including the right to recall. Okay.

Now, nowhere on here it says that Mr. Anderson was terminated or laid off.

Q. Okay, sir.

A. Wait a minute now.

Q. No. Hold on. You have now gone through two different documents. Now we have to clean the record up.

MR. WILLIAMS: Can you please mark this as Deposition Exhibit 4? For the Court's edification, we are marking a letter from September 8th, 2005 from the U.S. EEOC Philadelphia office as Deposition Exhibit 4, which is what Mr. Anderson alleges was new information that told him that there was a retaliation charge.

(Anderson Deposition Exhibit 4 was marked for identification.)

BY MR. WILLIAMS:

Q. Okay. Sir, I'm going to ask you to turn back to Deposition Exhibit 1.

A. Okay. Are we going to mark this exhibit?

Q. No. We don't need to.

A. I would like to.

Q. Sir, if you just wait a minute and go back to Deposition Exhibit 1 --

A. Okay.

Q. It is that document.

A. All right.

Q. This is your complaint, correct?

A. That's my complaint.

Q. If we go to the last two pages -- I'm sorry -- the last four pages of your complaint, please flip to the back of the complaint that's been marked as Exhibit 1.

A. Okay.

Q. Keep going.

A. I've got this right here. I already have this in front of me.

Q. You have to go to the exhibit.

In Deposition Exhibit 1, does that appear to be the affidavit of David Bull?

A. Yes, sir.

Q. And that's the affidavit that you were just reading from?

A. Correct.

Q. That affidavit is dated the 16th day of September, 1992.

A. Okay.

Q. Is that correct?

A. That's correct.

Q. And it is in lawsuit Roland Anderson vs. General Motors, Case Number 92335; is that correct?

A. That's correct.

Q. So this was an affidavit that was in your 1992 lawsuit, correct?

A. That's correct.

Q. And you read certain parts of that? You read part 2 that we see at the bottom, correct?

A. That's correct.

Q. And you read the first portions of that paragraph on the next page, correct?

A. That's correct.

Q. I'm going to read the remainder of that sentence, just so the Court record is clear, because apparently it says, quote, Under the agreement, he acquired certain seniority rights including a right to be recalled to employment, but these rights expired on a time for time basis. Having been employed for only four months, plaintiff's right to be recalled, as well as any other seniority rights, expired four months after he was laid off. That is by February 1983." That's the end of paragraph 2.

Did I read that accurately, sir?

A. Yes.

Q. Was that the rest of the paragraph that you did not read into the record?

A. No. Well, you didn't give me a chance. I can read that. That doesn't mean anything. It only reflects that I was laid off. I wasn't terminated or temporary.

Your Honorable Judge Farnan, as a matter of fact, G.M. knew when requested on page 10, para. 22, 23, and 24.

Q. G.M. April 15th of what year?

A. April 15 of 2005.

Go to page 12, para. 1-5 clearly show this (copy attached), termination nor temporary statement from G.M. was not say until EEOC investigation. As you can see and record reflects there was an affidavit see to Judge Farnan from Dave Bull. Clearly it was never mentioned about termination or temporary employee. Surely, Your Honor I am entitled to summary judgment.

The rules of this Court govern this procedure clearly R. 3.4 states R. 3.4(b) falsify evidence counsel or assist a witness to testify falsely or offer an inducement to a witness that is prohibited by law knowingly disobey on an assertion under the rules of a tribunal.

G.M. was trying to alter their question when he knew from complaint of March 2005 clearly (copy attached) mentioned of termination for 2005 not 1982. When in fact, knew, but violated Rule 3.4 when he asked page 10, para. Q. So all of this last part I read also because of my age to believe the Defendant listed me as terminated and retaliatory stuff deals with your lay-off back in 1982 misleading

There was no mention from G.M. for termination and surely not for affidavit to Judge Farnan. Clearly, G.M. attorney violated the law, R. 1.3 sure apply along with summary judgment with other rule of this Court already submitted for Court cost and legal fees.

<u>Misleading statements prohibited/conduct evidence held sufficient</u> to establish a violation of subsection (A)(1) and (4) of this rule were attorney misleading this Court or at disposition, October 24, 2007. Also R. 84, See State v. Guthmore 619 a 2d 1175 (Del. 1993) and § McCann, 669 a 2d 49 (Del. 1995) copy of Rule statue/law that governs this Court. Your Honor G.M. violated these rules with evidence, but disobeyed your rules and misleading actions and deadlines.

Your Honor, also I wanted to point out on my complaint in March I was told the plant was not hiring. This will prove I spoke to someone – reason, how would anyone know. Reason according to their affidavit para. 8, states (Wil. Plant – G.M.) facility did not hire or advertise for or accept application for new production. Employees at any time

from 2000 to present also in 2004-2005, see copy. Your Honor, clearly this will show I indeed spoke to someone and this will show I was told the same thing and G.M. to say I never spoke to someone is untrue. Mrs. Diane Graham is misleading also grounds for R. 56. See copy attached as well.

G.M. violation of R. 3.4 date of discovery May 2007, date of their underline statement was just December 6, 2007, in very small, small print. See copy attached. I did call and this is how I found out the same proof I called. It is against the law for misleading the Court (see misleading conduct prohibited), State v. Guthman, 619 A 2d 1175 (Del. 1993) attached and § other rule violation. McCann 669 2d 49 (Del. 1995) as well as 1.3 R. 56 or knowledge of knowing she misled or tried to mislead and your order for Case No. 06-669 G.M. and Mrs. Diane Graham, violations along with counsel also grounds for 1.3 and R. 56.

ExB

6. Plaintiff(s) filed charges with the BFOE pHila. DISTRICT offi
(Agency)
THe Bourse 21 S. FIFTH STR, Suite 400 - pHila PA. 19106 -
(Street Address) (City) (County) (State) (Zip)
regarding defendant(s) alleged discriminatory conduct on: April 10-05
(Date)

7. Attach decision of the agency which investigated the charges referred in paragraph 6 above.

8. Was an appeal taken from the agency's decision? Yes ☒ No ☐
If yes, to whom was the appeal taken? MRS. Marie M. Tomasso DIST. Director

9. The discriminatory acts alleged in this suit concern: (Describe facts on additional sheets if necessary)
I Tried to Apply for A Job in March 2005. I was Not given An Application and Told that the [illegible] was not Hiring, On or About April 15, 2005 I Learned From Individuals, that Respondent was Hiring. Also because of my Age 52. to believe the defendant listed me AS TERminated - (Actually I was Laidoff) it Also May Had Retaliatory effect of my being denied benefits to which I'm Entitled. (Also see E/A - More Information

10. Defendant's conduct is discriminatory with respect to the following:

A. ☒ Plaintiff's race
B. ☐ Plaintiff's color
C. ☐ Plaintiff's sex
D. ☐ Plaintiff's religion
E. ☐ Plaintiff's national origin

Ex B

11. Plaintiff prays for the following relief: (Indicate the exact relief requested)

Job, and for pain / Suffering and list me, AS Laid-off status instead of Terminated

I declare under penalty of perjury that the foregoing is true and correct.

Dated: Dec. 15, 05

Roland C. Anderson

(Signature of Plaintiff)

O

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROLAND C. ANDERSON, Plaintiff

v.

GENERAL MOTORS CORPORATION, Defendant.

Civil Action No. 06-669 JJF

## AFFIDAVIT

Diane Graham, being first duly sworn and of lawful age, hereby states as follows:

1. My name is Diane Graham. I am of lawful age and I am competent to testify to the matters set forth in this Affidavit.

2. I have served as the People Systems Manager for General Motors Corporation's ("GM") Wilmington Assembly Plant since 2004. I have personal knowledge of the facts stated herein and if called to testify as a witness in this action, I would testify truthfully and competently to each of the following facts set forth in this Affidavit.

3. GM has a written policy against discrimination. This written policy is communicated to employees through postings and letters, and is part of the collective bargaining agreement with the UAW.

4. GM and UAW are parties to a national collective bargaining agreement and the local UAW chapter and GM are also parties to a local collective bargaining agreement. Both collective bargaining agreements govern the hours, wages, working conditions and other terms and conditions of employment of bargaining unit employees employed at GM's plant.

EX. 3

5. As the People Systems Manager, I supervise the employees in the human resources department. These employees are trained to be professional and courteous to anyone that contacts GM. These employees are also trained regarding GM's policies against discrimination.

6. I have personally contacted each human resources employee and no employee recalls speaking with plaintiff in March or April 2005. Additionally, no human resources employee has told any caller or applicant he or she is "all washed up."

7. GM's Wilmington facility was not hiring, advertising for or accepting applications for new hourly production employees at any time from 2000 to present. Further, GM hired no new hourly production employees in 2004 or 2005. All employees with seniority dates of 2000 or 2001 were transferred from other GM facilities to Wilmington.

8. GM's Wilmington facility did not hire, advertise for, or accept applications for new production employees in 2006 or 2007. However, in 2006, GM transferred seven production employees from GM facilities that it was divesting itself of to Wilmington.

9. GM's Wilmington facility has recalled no employee from layoff status from 2005 through 2007.

10. Attached to this affidavit are copies of the seniority list for November 6, 1999 through November 5, 2007.

11. Further Affiant sayeth not.

Dm Graham

Diane Graham

EX. 3

Ex E (1)

connection with a request for permission to withdraw that is premised on a client's misconduct, a lawyer may reveal information relating to the representation only to the extent reasonably necessary to comply with this Rule or as otherwise permitted by Rule 1.6.

---

**Subsection (a) describes separate violations.** — The act of offering evidence prohibited by subsection (a)(4) is a separate and distinct act in a judicial proceeding from the act of filing a pleading or making a statement prohibited by subsection (a)(1). In re McCann, 669 A.2d 49 (Del. 1995).

**Duty of defense counsel to both defendant and court.** — Defense counsel has a responsibility not only to the defendant-client, but to the trial court, as well. State v. Grossberg, 705 A.2d 608 (Del. Super. Ct. 1997).

The Sixth Amendment right to counsel was never intended to override the court's broader responsibility for keeping the administration of justice and the standards of professional conduct unsullied. State v. Grossberg, 705 A.2d 608 (Del. Super. Ct. 1997).

**Knowledge of client's perjury.** — An attorney should have knowledge beyond a reasonable doubt before determining under this Rule that his client has committed or is going to commit perjury. Shockley v. State, 565 A.2d 1373 (Del. 1989).

Counsel adequately performed his duty as officer of court by disclosing to the court what he believed beyond a reasonable doubt to be his client's proposed perjury; counsel's resort to narrative testimony when client insisted on testifying was reasonable under the circumstances and did not prejudice client's case. Shockley v. State, 565 A.2d 1373 (Del. 1989).

**Misleading conduct prohibited.** — An attorney, acting as an officer of the court, has a duty to respond with complete candor to court inquiries; counsel may not, knowingly or otherwise, engage in conduct which may reasonably be perceived as misleading either to the court or to opposing counsel. State v. Guthman, 619 A.2d 1175 (Del. 1993).

Attorney violated subsection (a)(1) of this Rule and Prof. Cond. Rules 3.4(b) and 8.4(c) when he identified himself as client's "nephew" and submitted falsified evidence to the tribunal in the form of a petition which identified him as such. In re McCann, 669 A.2d 49 (Del. 1995).

Attorney's misrepresentation to a Family Court that a client was not in arrears with regard to alimony and had paid the debt in full was determined to have been an act of dishonesty, fraud, deceit, or misrepresentation in violation of Law. Prof. Conduct R. 8.4(c) and (d), a failure to provide competent representation to the client, in violation of Law. Prof. Conduct R. 1.1, and a failure to explain a matter to the extent reasonably necessary to permit the client to make informed decisions, in violation of Law. Prof. Conduct R. 1.4(b); the misrepresentation was found to have been knowingly made, but the recommended suspension of 2 years was reduced to 6 months, because mitigating circumstances were found in the nature of the attorney providing the Family Court with correspondence, which would have permitted the Family Court and the adverse party an opportunity to verify the debt. In re A Mbr. of the Bar of the Supreme Court of the Delaware (Chasanov), — A.2d — (Del. Feb. 22, 2005).

Attorney's acceptance of a retainer of $250 from a client through a prepaid legal plan, while never contacting the client and refusing to refund the retainer until after the first disciplinary hearing, was held to have violated Law. Prof. Conduct R. 1.3, with regard to acting with reasonable diligence and promptness, Law. Prof. Conduct R. 1.4(a) and (b), with regard to failing to keep the client reasonably informed to the extent reasonably necessary to permit the client to make informed decisions, and, Law. Prof. Conduct R. 1.15(b) and (d), with regard to failing to safeguard the client's funds and deliver them upon request; the prepaid legal firm had refused to refund the retainer and, in fact, showed no record of the amount, which had been paid directly to the attorney. In re A Mbr. of the Bar of the Supreme Court of the Delaware (Chasanov), — A.2d — (Del. Feb. 22, 2005).

**Misleading statements prohibited.** — Evidence held sufficient to establish a violation of subsections (a)(1) and (4) of this Rule where attorney inconsistently informed the trial court that she did as to whether she did or did not represent a client. In re Shearin, 721 A.2d 157 (Del. 1998), cert. denied, 526 U.S. 1122, 119 S. Ct. 1776, 143 L. Ed. 2d 805 (1999).

**Development that renders material representation inaccurate.** — An attorney's duty to respond with complete candor to the court includes a responsibility to promptly inform the court and opposing counsel of any development that renders a material representation to the court inaccurate. State v. Grossberg, 705 A.2d 608 (Del. Super. Ct. 1997).

## Rule 3.4. Fairness to opposing party and counsel.

A lawyer shall not:

(a) unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential

Also your Honor The Law STATES Uncontroverted evidence offered in support of motion for summary Judgment must be Accepted AS True - SEE § FRANK C. SPARKS CO. V. Huber BAKing CO. 48 DEL. 9. 96 2d 456 (1953) behringer V. William Cretz Brewing FIRE INS. CO V. EASTern SHore LAbs. INC 301 A 2d 526 (DEl. Super. Ct. 1973). (R. 56)

THe evidence Founded FROM D.O.L Attack of or From False INFormation given to D.O.L - About my Job STATus was indeed A Violation of the protection Class - SEE THe Founding - (of D.O.L) Attack - THere own Finding - for THe protection CLASS. / SO THere for I'Am entile to Summary Judgment - Under there Finding and LAW and THis provision of STATue. AS well.

## III. PLEADINGS AND MOTIONS.

**Rule 7.1.1. Statement required to be filed with non-dispositi[ve] motions.**

Unless otherwise ordered, the Court will not entertain any non-dispositi[ve] motion, except those motions brought by a person appearing *pro se* and tho[se] brought pursuant to Fed. R. Civ. P. 26(c) by a person who is not a party, unle[ss] counsel for the moving party files with the Court, at the time of filing t[he] motion, a statement showing that the attorney making the motion has made [a] reasonable effort to reach agreement with the opposing attorneys on t[he] matters set forth in the motion.

Source. — Former Delaware Local Rule 3.1D and 37.1 with revisions.

**Rule 7.1.2. Briefs, when required and schedule.**

(a) *Briefing and affidavit schedule.* A party filing a motion shall not file [a] notice of said motion. Unless otherwise ordered by the Court, the briefing an[d] affidavit schedule for presentation of all motions shall be: (1) the opening brie[f] and accompanying affidavit(s) shall be served and filed on the date of the filin[g] of the motion; (2) the answering brief and accompanying affidavit(s) shall be served and filed no later than 10 days after service and filing of the openin[g] brief; (3) the reply brief and accompanying affidavit(s) shall be served and filed no later than 5 days after service and filing of the answering brief. An append[ix] may be filed with any brief. The above schedule may be set aside if, at the tim[e] of the filing of a motion, a party advises the Court that, because of the natur[e] of the motion, all parties believe that no briefing is required. Any party ma[y] waive its right to file a brief upon notice to the Court.

(b) *Memoranda of points and authorities.* The Court may order or the parties may agree to serve and file, simultaneously or on an ordered or agree[d] schedule, statements of points and authorities in memorandum form in place of briefs.

(c) *Citation of subsequent authorities.* No additional briefs, affidavits, or other papers in support of or in opposition to the motion shall be filed withou[t] prior approval of the Court, except that a party may call to the Cour[t's] attention and briefly discuss pertinent cases decided after a party's final brie[f] is filed or after oral argument.

Source. — Former Delaware Local Rules 3.2A and B and 3.1C and E with revisions.

**Showing of prejudice.** — Where a creditor moved to dismiss plaintiff unsecured creditor's adversary complaint for failure to state a claim, and then argued that the committee's response to the motion be stricken, as it violated U.S. Dist. Ct., D. Del., R. 7.1.2(a), 7.1.3(c), the objections to the committees' response were technical in nature, and there was no showing of prejudice of any kind to the creditor, thus, the response to the motion would not be stricken; the court, although further noted that the cre[d]itor's motion had not complied with U.S. Dis[t]. Ct., D. Del., R. 5.1.1, which required all plea[d]ings, motions, and other papers presented [for] filing to be double-spaced except for quot[ed] material and footnotes, found no prejudice [to] the committee was shown, meaning that the creditor's papers need not stricken either. Offi[cial] Comm. of Unsecured Creditors of the [I]T Group v. Brandywine Apartments (In re I[T] Group, Inc.), 313 B.R. 370 (Bankr. D. Del. 2004).

III. Pleading and Motions

Rule 7.1.2 Briefs when Required on Schedule

A party filing a Motion shall not file a Notice of said Motion unless otherwise ordered by the Court. The briefing and affidavit schedule for presentation of all Motions shall be: (1) The open brief and accompanying affidavit(s) shall be served and filed on the date of the filing of the Motion. (2) The answer brief and accompanying affidavit(s) shall be served and filed no later than ten (10) days. After service and filing of the open brief or motion, Defendant had no later then ten (10) days to respond that was giving notices from the Court (e-mail) according to Docket and proof of service by the Plaintiff as well. This would also come under R. 55.

Also see R. 1.1 scope of the rules – (the former rules shall govern); R. 1.1(e) Rules of Construction United States Code, Title 1, Section 1 to 5 shall as for applicable, govern the construction of these rules. See § Rule 1.1/1.2 Rules. G.M. clearly missed deadline to respond to judgment filed on June 28, 2007, and had ten (10) days according to R. 7.1. Also Rule 55 twenty (20) day to respond, but failed to reply to Rules and R. 1.1/R.1.2 see attached. G/M Had 10 days to Response to pleading and motions. This is a moot point to do so - now. (for any reasons).

Thank you,

Roland C. Anderson
113 Lloyd Street
Wilmington, DE 19809

Certificate of Services
To Honorable Judge Farnan, Jr.
Michael William
Michael Basenkell
300 Delaware Ave., Ste. 210
Wilmington, DE 19801