In the United States District Court for the District of Delaware

Roland C Anderson vs. General Motor Corporation

Civil Action No. 05-87755F

## Motion to respond to Defendants's Motion for Summary Judgment

1.) Plaintiff respectfully ofter the following memorandum in support denying motion for summary judgment.

2.) G.M is falsely stating I claim, because I was not recall by G.M is clearly misleading. G.M is violating R , 3, 4

3.) Clearly the claim I was filing, deals with Retaliation Class because G.M listed me as being terminated – in which clearly record shows I was lay-off and also an hourly worker). Evidence shown.

4.) G.M claims this claim is the same (in which clearly not, the second one as well -05-877-A. G.M also stated I never called in March 2005. Stating Plaintiff never contact G.M. As you know, how could I know that G.M was not accepting application in March 2005? G.M was correct to say I was looking for part-time work. Your Honor, G.M states I did call, see on pg. 2 of their motion. – Which says- second, G.M truthfully answered Plaintiff's telephone inquiry. A confirmed that was not accepting applications at that time. (See Pg. 2) The dℓ. Neul said I couldn't work part-time.

5.) G.M also claim Plaintiff alleges in lawsuit the G m's statement to the EEOC that he was temporary worker back in 1982 is some how retaliatory. Answer (1) G.M violated R 3.4 – Reason G.M states I allege retaliatory back in 1982 is misleading at the deposition clearly was stated; this did not pop up until EEOC did their investigation of first claim with Dept. of Labor see their finding- attach Sept. 8, 2005.

6). Your Honor, G.M said Plaintiff alleges this statement some how adversely affected his G.M benefits. Since 1984, - My answer with evidence – Your Honor I was hired as hourly worker  and did have

*EX H*
(A)

**English As A Second Language (ESL) Free Classes**

**New Castle County**
…………mink Adult Basic Ed.

Rule 3.4 PROFESSIONAL CONDUCT RULES 324

evidentiary value. A lawyer shall not counsel or assist another person to do any such act;

(b) falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law.

(c) knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists;

(d) in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent efforts to comply with a legally proper discovery request by an opposing party;

(e) in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant or the guilt or innocence of an accused; or

(f) request a person other than a client to refrain from voluntarily giving relevant information to another party unless:

(1) the person is a relative or an employee or other agent of a client; and

(2) the lawyer reasonably believes that the person's interests will not be adversely affected by refraining from giving such information.

**COMMENT**

[1] The procedure of the adversary system contemplates that the evidence in a case is to be marshalled competitively by the contending parties. Fair competition in the adversary system is secured by the prohibitions against destruction or concealment of evidence, improperly influencing witnesses, obstructive tactics in discovery procedure, and the like.

[2] Documents and other items of evidence are often essential to establish a claim or defense. Subject to evidentiary privileges, the right of an opposing party, including the government, to obtain evidence through discovery or subpoena is an important procedural right. The exercise of that right can be frustrated if relevant material is altered, concealed or destroyed. Applicable law in many jurisdictions makes it an offense to destroy material for purpose of impairing its availability in a pending proceeding or one whose commencement can be foreseen. Falsifying evidence is also generally a criminal offense. Paragraph (a) applies to evidentiary material generally, in-

cluding computerized information. Applicable law may permit a lawyer to take temporary possession of physical evidence of client crimes for the purpose of conducting a limited examination that will not alter or destroy material characteristics of the evidence. In such a case, applicable law may require the lawyer to turn the evidence over to the police or other prosecuting authority, depending on the circumstances.

[3] With regard to paragraph (b), it is not improper to pay a witness's expenses or to compensate an expert witness on terms permitted by law. The common law rule in most jurisdictions is that it is improper to pay an occurrence witness any fee for testifying and that it is improper to pay an expert witness a contingent fee.

[4] Paragraph (f) permits a lawyer to advise employees of a client to refrain from giving information to another party, for the employees may identify their interests with those of the client. See also Rule 4.2.

**Violation shown.** -- Attorney violated subsection (c) when, in connection with the receivership of his law practice, he failed to cooperate with the receiver's efforts to gain control over the books and records of the practice. In re Maguire, 725 A.2d 417 (Del. 1999).

Where attorney violated Rule 1.2(a), Rule 1.3, Rule 1.4(a) and (b), Rule 1.15(a) and (d), Rule 1.16(b) and (d), and Rule 3.4 (c), attorney agreed to pay all the costs of the disciplinary

proceedings, the costs of the investigatory audits performed by the Lawyers' Fund for Client Protection, the restitution noted in the parties stipulation, and consented to the imposition of a public reprimand with conditions. In re Solomon, 745 A.2d 874 (Del. 1999).

Where attorney who had practiced for over 20 years and was found to be a good lawyer committed professional misconduct by failing to

325 PR

appear at a scheduled family cou by failing to reschedule two oth ences in family court, which con tions of Del. Law. R. Prof. Conc 8.4(d), the public probation per ney was already serving for pri was extended for an additiona Solomon, — A.2d — (Del. Apr. 2

Law. R. Prof. Conduct 1.15(a), 1.16(d), 3.4(c), 8.1(b), 8.4(d) were for several years the attorney n improperly accounted for the att funds and the attorney's escro inaccurately completed certific once; the attorney was suspenc could apply for reinstatement the attorney fulfilled conditions return to solo practice. In re Fou 1167 (Del. 2005).

When an attorney handling that, failed to probate the esta manner, the attorney violatec Conduct 3.4(c). In re Wilson, Nov. 9, 2005).

**Failure to comply with Court in relation to pleadir** of this Rule. In re Tos, 576 A.2c

**Failure to timely probat** failing to probate the estat knowingly disobeyed the tril violated Law. R. Prof. Cond Wilson, — A.2d — (Del. May

**Misleading conduct prol** ney violated subsection (b) Prof. Cond. Rules 3.3(a)(1) ar identified himself as client's " mitted falsified evidence to t' form of a petition that identifi re McCann, 669 A.2d 49 (Del

**No duty to reveal weak** While an attorney has dutie opposing party and may not involving dishonesty, fraud, orientation, an attorney need

**Rule 3.5. Impartiali**

A lawyer shall not:

(a) seek to influenc means prohibited by l

(b) communicate or person or members o authorized to do so by

(c) communicate wi unless the communica

(d) engage in condi fied or discourteous c

[1] Many forms of impro tribunal are proscribed by are specified in the ABA M Conduct, with which an

*Seniority List* 1981 — And On
Name was never place on it

```
-24-93      VIP REPORT 5150                    S E N I O R I T Y
EIS-4545-HOURLY
UNIT ID - 1907
                                                    WILMINGTON
CLOCK                 NAME/Started
                          Work at          OGM SENIORITY    OGM              SOCI/
                          G.M.                DATE          DATE             SECURI
```

| CLOCK | NAME | OGM SENIORITY DATE | OGM DATE | SOCIAL SECURITY |
|---|---|---|---|---|
| - | S H A KLABE 50 | 12-28-81 | 12-28-81 | 221-24- |
| - | S R S NULTON, JR. | 12-28-81 | 12-28-81 | 172-44- |
| - | S H S BURKINS | 03-01-82 | 03-01-82 | 199-42- |
| - | S R A FARMER 50 | 03-01-82 | 03-01-82 | 222-22- |
| - | S R G JENKINS | 03-01-82 | 03-01-82 | 139-46- |
| - | S J R RIGBY | 03-02-82 | 03-02-82 | 179-46- |
| - | S J J MCLAUGHLIN, JR. | 03-08-82 | 03-08-82 | 207-40- |
| - | S R P ALLEN | 03-15-82 | 03-15-82 | 222-30-( |
| - | S R N CAMERON 50 | 03-30-82 | 03-30-82 | 214-36-( |
| - | S C E KELLY | 04-19-82 | 04-19-82 | 185-10-6 |
| - | S W F BOLIN | 04-21-82 | 04-21-82 | 221-46-C |
| - | S D N HOGK | 04-26-82 | 04-26-82 | 185-36-5 |
| - | S J G MEYERS | 06-08-82 | 06-08-82 | 199-38-3 |
| - | P C M BLALOCK | 06-14-82 | 06-14-82 | 222-58-0 |
| - | M L BLALOCK | 06-14-82 | 06-14-82 | 221-48-4 |
| - | F J DIETER | 06-14-82 | 06-14-82 | 159-38-7 |
| - | J W FOSTER | 06-14-82 | 06-14-82 | 156-6)-2 |
| - | M J FRITZ | 06-14-82 | 06-14-82 | 221-4)-9 |
| - | R J PETRUCCI | 06-14-82 | 06-14-82 | 222-4(-6 |
| - | J G SOCKOLOSKY, JR. | 06-14-82 | 06-14-82 | 221-5)-8 |
| - | B K TINSLEY | 06-14-82 | 06-14-82 | 221-51-0 |
| - | D M HARVIE | 06-15-82 | 06-15-82 | 222-4(-7 |
| - | I L O'NEAL | 06-21-82 | 06-21-82 | 222-38-9 |
| - | C L DOUGHERTY | 06-22-82 | 06-22-82 | 221-38-8: |
| - | J J KUBOVCIK | 06-22-82 | 06-22-82 | 222-38-2( |
| - | R B LEWIS, JR | 06-22-82 | 06-22-82 | 222-56-65 |
| - | A L NEEDAM | 06-22-82 | 06-22-82 | 213-84-28 |
| - | M P TARONE | 06-22-82 | 06-22-82 | 221-48-83 |
| - | G WASNO | 06-22-82 | 06-22-82 | 221-58-07 |
| - | R D PECHIN | 06-23-82 | 06-23-82 | 164-38-14 |
| - | R L DENSTEN | 06-28-82 | 06-28-82 | 147-58-89 |
| - | M L LIVINGSTON ✓ | 06-28-82 | 06-28-82 | 147-58-07 |
| - | T M JOHNSON ✓ | 07-02-82 | 07-02-82 | 222-58-81 |
| - | D C RILEY ✓ | 07-12-82 | 07-12-82 | 222-50-15: |
| - | T E VANN | 07-12-82 | 07-12-82 | 222-58-13 |
| - | T L WERSINGER | 07-12-82 | 07-12-82 | 222-46-(C( |
| - | G A BIGGS | 07-14-82 | 07-14-82 | 222-42-16 |
| - | K L BAINE | 07-15-82 | 07-15-82 | 221-60-93( |
| - | D BUNGY | 07-15-82 | 07-15-82 | 222-50-05: |
| - | D A HOLDREN | 07-15-82 | 07-15-82 | 222-30-68; |
| - | N HUDSON | 07-15-82 | 07-15-82 | 221-34-24; |
| -20699 | B T RYLE 50 | 07-15-82 | 07-15-82 | 233-70-831 |
| - | R G ESTEP | 07-16-82 | 07-16-82 | 222-50-93( |
| - | T L HOWARD | 07-16-82 | 07-16-82 | |

$\mathcal{E} \times \Omega \, (1)$

21. Plaintiff's claims rely primarily on an affidavit from 1992 that was part of his prior lawsuit. Anderson Depo. p. 46, lns. 9-19; *see* Affidavit of David Bull attached hereto as Exhibit 4.

22. Plaintiff can identify no employee under 40 that was treated more favorably and no employee of GM that intentionally discriminated or retaliated against him. Anderson Depo. pp. 122-124.

23. Plaintiff can identify no individual hired by GM in March or April 2005. Anderson Depo. p. 53-54, lns. 11-24; 1-5.

24. Plaintiff spoke with the individual at the liquor store in April. 2005. Anderson Depo. pp. 34-35, lns. 18-24, 1-15.

25. GM hired no hourly production employees at the Wilmington facility in 2004 or 2005. *See* Exhibit 3.

$\rightarrow$ 26. In 2005, GM was not advertising for any available positions, was not accepting applications or hired no new employees. *See* Exhibit 3.

27. Plaintiff has filed five prior unsuccessful lawsuits against GM. Anderson Depo. p. 60, lns. 11-23.

28. No record or document establishes plaintiff made any calls to GM in March 2005. Anderson Depo. p. 62, lns. 21-24.

29. Plaintiff alleges that a seniority list from 1993 establishes that people were hired in 1981 and 1982 and those claims form the basis for the allegations in his complaint. Anderson Depo. pp. 73-74, lns. 21-24. 1-4.

30. Plaintiff's seniority expired on a time basis 4 months after he had been laid off and so did his right to recall. Anderson Depo. pp. 74-75, lns. 22-24, 1-7.

6

simply wanted to know GM's hiring status because he was considering looking for part-time work.

GM did not discriminate against plaintiff. First. GM hired no new employees at this facility in 2004, 2005 or 2006.[1]    Second, GM truthfully answered plaintiff's ←—— telephone inquiry and confirmed that it was not accepting applications at that time. Third, plaintiff was not qualified for employment at GM as he is not released to return to the open labor market. Thus, plaintiff's claims should be dismissed as no prima facie case exists and GM had a legitimate, nondiscriminatory reason for its actions.

Plaintiff also alleges (in the lawsuit that was consolidated with the present case) that GM's statement to the Equal Employment Opportunity Commission ("EEOC") that he was a temporary worker back in 1982 is somehow retaliatory. Specifically, plaintiff alleges this statement somehow adversely affected his GM benefits. This allegation is unfounded as plaintiff has received no GM benefits since 1984 and, in any case, it is insufficient to establish a retaliation claim. Further, plaintiff's claims regarding his termination and/or employment status were decided by this Court's prior Orders.

GM did not discriminate against plaintiff, and no evidence establishes GM's explanation for not hiring plaintiff was pretextual. Also, plaintiff's complaints about his prior employment were dismissed by this Court and every administrative body to review this case over the past twenty (20) years. Therefore, GM is entitled to summary judgment and/or dismissal of all of plaintiff's claims. GM also seeks its costs and fees associated with defending this matter. Further, plaintiff should be prohibited from filing

---

[1] In late 2006, seven (7) employees were transferred to the Wilmington facility from plants of which GM was divesting. *See* Affidavit of Diane Graham attached hereto as Exhibit 3.

[2] The filing of an action or defense or similar action taken for a client is not frivolous merely because the facts have not first been fully substantiated or because the lawyer expects to develop vital evidence only by discovery. What is required of lawyers, however, is that they inform themselves about the facts of their clients' cases and the applicable law and determine that they can make good faith arguments in support of their clients' positions.

a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification or reversal of existing law.

[3] The lawyer's obligations under this Rule are subordinate to federal or state constitutional law that entitles a defendant in a criminal matter to the assistance of counsel in presenting a claim or contention that otherwise would be prohibited by this rule.

Violation shown. — Evidence held sufficient to establish a violation of this Rule where attorney and her clients demonstrated a history of bringing claims in one court intended to

interfere with another court's jurisdiction and orders. In re Shearin, 721 A.2d 157 (Del. 1998), cert. denied, 526 U.S. 1122, 119 S. Ct. 1775, 143 L. Ed. 2d 805 (1999).

## Rule 3.2. Expediting litigation.

A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client.

### COMMENT

[1] Dilatory practices bring the administration of justice into disrepute. Although there will be occasions when a lawyer may properly seek a postponement for personal reasons, it is not proper for a lawyer to routinely fail to expedite litigation solely for the convenience of the advocates. Nor will a failure to expedite be reasonable if done for the purpose of frustrating an opposing party's attempt to obtain rightful

redress or repose. It is not a justification that similar conduct is often tolerated by the bench and bar. The question is whether a competent lawyer acting in good faith would regard the course of action as having some substantial purpose other than delay. Realizing financial or other benefit from otherwise improper delay in litigation is not a legitimate interest of the client.

Violation shown. — Evidence held sufficient to establish a violation of this Rule where attorney demonstrated a history of bringing frivolous collateral claims. In re Shearin, 721 A.2d 157 (Del. 1998), cert. denied, 526 U.S. 1122, 119 S. Ct. 1775, 143 L. Ed. 2d 805 (1999).

Attorney's failure to respond to the Com. R. Ct. Civ. R. 41(e) notice of dismissal of the no-fault case, resulting in dismissal of the case for which the relevant limitations period had passed, was in violation of this rule. In re Becker, 788 A.2d 527 (Del. 2001).

## Rule 3.3. Candor toward the tribunal.

(a) A lawyer shall not knowingly:

(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;

(2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or

(3) offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. A lawyer may

(32). Clearly David Bull's Affidavit under oath to this court never mentions I was a Temporary or terminated about job status to this court. Further proof I was an hourly worker.

(33). G.M states Plaintiff alleges that the information provided to EEOC affected his job-status. and his ability to get benefits.

Your Honor, as stated above I am still entitled to some benefits, such as pension, GSI and 401k and other, see entailment attach for hourly workers. (But G.M told EEOC on September 2005 I was temporary or terminated.)

So therefore I couldn't receive those benefits, due to the Retaliation Act, I am entitle to that act for R56 for (violation of R3.3 - R3.4 ☞ ⋀)

Also, G.M states - plaintiff alleges that G.M listed him as terminated sometime after he filed his complaint in April 2005. - In misleading; clearly it was after the finding of the EEOC investigation finding by EEOC. - Done in Sept. 2005 Dept. of Labor - EEOC Finding Attach.

(34). G.M is still misleading to say Plaintiff never received any payment or be from G.M since he was discharged in 1982. (First of all, I was never discharged. I was clearly Lay-off see Dave Bull Affidavits of the Record. Also this was one of the reasons I    receive benefits because of the false statement about job status. G.M in violation of R.3.3 and R. 3.4.

(35), as stated above - G.M gave false information in violation of R. 3.4 it is clear by their on omitting and by Dave Bull G.M EEOC person, his affidavits.

## Plaintiff Prior Lawsuit

G.M has mislead this court to say I was temporary and terminated, (1) - Your Honor, this retaliatory affect my pension to collect when I turn 62 for benefits. As well NO benefits for temporary employees. David bull Affidavits clearly shows I was an hourly worker, as require. аттнеtt unter onth.

On Page 8, Foot Note G.M Your Honor states: Employee Shall is regarded as temporary employee until their names are on the seniority list. There shall be no responsibility for the reemployment of temporary employees if they are laid-off or discharged during this period. - Par. 57 provides that employee may acquire seniority by working 90 days during a period of six continuous months.

But, G.M failed to state, than other references which clearly given. Rules for computing seniority of employee - who require seniority. By working 90 days ⇢within six continuous months and computing the period specified in paragraph (4) ⇐ THW (4C). See par. (4) Attach - it states the following: unless employee are at work on the 90, the day of their accumulated credited period falls on a holiday or on Independence wk, Shutdown Day, the employee will be consider as having seniority as of the holiday or the Independence Wk Shutdown Day. If the 90th

day of their accumulated credited period falls on their vacation pay eligibility date, the employee will be considered having seniority as of the vacation pay eligibility date.

Your Honor, - par (4) page 182 clearly states the computing the period specified, 4 THRU (4C). Clearly state unless employee is at work on the 90th day of their accumulated credited period. David Bull of the EEOC for G.M Affidavits. See Copy correct. I was hire as an hourly worker and did acquire seniority rights. See Copy *td by G.m)* Attach. *Union R (73) — for Aquiring 90 days - (NOT TEEN minuted As stated by G.m) c-m violation R. 3, 4/R.3, 3*

G.M left out this part, and was misleading this court Violation R (3.4).

Paragraph (57) page 183 refers to temper employee has to work for six continuous months. Copy Attach. *NEXT Pg 182 - for Tempory Employee (Union CONTRACT) (73).*

I was hire as an hourly worker see David Bull Affidavits- Attach. Also in David Bulls' report clearly states: Temporary do not get call back - copy/attach. G.M clearly mislead the court to say I was terminated or a temporary employee to prior claim this is clear under R 3.4- G.M clearly violated.

G.M EEOC denies Plaintiff's charge as untimle on March 9, 2004. The law is clear, when a person gives false information Rule 3.3 - candor toward tribunal.
A). A lawyer *S* Hall not knowing.
1). Make a false statement of fact or law.
To a tribunal or fail to correct a false statement of material fact of law previously made to the Tribunal by the lawyer,
(2) Fail to disclose to the Tribunal, known to the lawyer to be directly - Adverse to the position of the client and not disclosed by opposing counsel or evidence that the lawyer knows to be false. - Lawyer evidence knew it was falsity. *(G.m By Evidence S Hown By the Plaintiff - I'am entile to R. 56 As well,)*

G.M was aware I was going to the school (to become) an electrician - in there motion - also fail to disclose parg. 73 of the Union Contract with G.M - which clearly states (73) - Seniorty Rules. - The employment of the following persons shall not be goverened by the seniority Rules: Students and graduates of Technical or professional schools - or training part of a training course, see copy attach - The rules didn't apply to me. see contract (73) attach. G.M violated R. 3.4 aswell, motion for judgement aswell and R 3.3 attach. *Union R. 73 - Also Attach.*

44) Union never informed me of allegation and the *I.x6* lay-off had accured. It was the job of the union, S88 ( 67 contract) Employee will be laid-off (not terminated) and rehired in accordance with local seniority agreements. G.M knew this but fail *to* disclose . Violation R 3.4 and 3.3, the law cleary states.
 1) The law is clear and quitably Toll
1) Where the defendant has activly mislead the plaintiff - the Plaintiff's course of action, see Smith Homie vs. Disctrict of Columbia I55F 3d575, 576 Fed. Cir 1988). In the third circuit there are three principal circumstances under which a

Statue of Limitation can be quitably tolled. The other two are:

2) Were the Plaintiff in some extroardinary way has prevented from his or her rights asserting.

3.) Where the Plaintiff has time asserted his or her rights. Also Oliver vs. Levin Fishburnseedron Eberman - 38F, 3d1380, 1387, (3d cir 1994) Citing sett. District of Allentown vs. Marshall, 65f, 2d 16, 19-20, - (3daive 1981)

Court .. rule 60 - reason- hybrid action. under S.301 (A) of lima - the statue of limitations can be equitably tolled.

Also see S. Chapple vs. National Starch and chemical co. and oil. 178F, 3d 502 (7th cir 1999) Cook vs. Columbian Chemical CO 997 F2d 1239 (8th cir 1993) Under the statue I am entitled to releif from the statue of limitation./ Rule R.60 - From information presebted./ statue.

## A). Summary Judgement Statandard stated

Summary judgement is appropriate if viewing the record in the light most favorable to the moving party. There is no genuine issue as to any material fact. The moving party is entitled to judgment as matter of law. Fed R 56 (c) the issue is genuine if given the evidence - the jury can return a verdict in favor of the moving party, Nanny V. Rowan college 101 F, 2d 272, 281, (D,N,S, - 2000) (Anderson V Liberty Lobby, Inc. 477 U.S. 242 248 1986)

Your Honor, evidence speaks for it'self from Union Contract in which Dave Bull under oath closely states I was an hourly worker, I have other union members willing to be call:ed about my job status. As I stated in my disclosary or No   8-2007. G.M mislead this court and gave false information about my job status. As you can see, from this evidence and the finding of D.O.L investigation/violation R 3.3, R 3.4. I am entitled to judgment in matter of law against G.M.

A fact is a meterial if, under the governing law, it might affect the outcome of the case S88, NANNAY 101F, Supp 2d at 281. (again   . evidence speaks for it'self). See copies of Dave Bull oath to their and EEOC investigation attach, clearly G.M. violated rules 7, 1, 2, and others. i am entitled by law for judgement in matter of law R, 56  · . To show that the non-moving party has foiled to establish an essential element of it's case upon which the moving partycould bear the ultimate gurden of proof at trial. Your Honor - evidence of the union contract and Dave Bull affordavis expl·ain my rights were violated - also the rules of this court. $ 3.4, 3.3 - False information, I was an hourly worker under contract (73) clearly states, the employment of the following persons shall not be governed by seniorty rules: students, and graduates or professionals schools and special employee receiving training as part of a formal training course. As required I am a graduate of technical still trade (Electrician) copy attach. G.M never mention (73) from contract./ Also I was entitle R.33 Jury demanded if necessary,

G.M is clearly untimely in respond to my motion in June 28, 07 - under Rule 7,1,2 pleasing and motion G.M. had ten days to respond and file No extension R, 6, 5) G.M is untimely and prohibited by  STATU.  G.M is clearly misleading 0 to

**The Trustee of the UAW-GM Legal Services Plan, who accumulates assets through which Legal Services Plan benefits are provided, is:**

Comerica N.A.
Fort & Washington Boulevard
Detroit, Michigan 48226

**The Trustee of the Health Care Program, who accumulates assets through which Health Care Program benefits are provided, is:**

State Street Bank and Trust Company
Master Trust Division
One Enterprise Drive
North Quincy, MA 02171

## Collective Bargaining Agreement

The Hourly-Rate Employees Pension Plan, Life and Disability Benefits Program, Health Care Program, Supplemental Unemployment Benefit Plan, Guaranteed Income Stream Benefit Program, Profit Sharing Plan, Personal Savings Plan, and the UAW-GM Legal Services Plan, each as described in this booklet, are maintained pursuant to a collective bargaining agreement with the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America. A copy of the agreement may be obtained upon your written request to the Plan Administrator.

*The U.S. Equal Employment Opportunity Commission*

# Retaliation

An employer may not fire, demote, harass or otherwise "retaliate" against an individual for filing a charge of discrimination, participating in a discrimination proceeding, or otherwise opposing discrimination. The same laws that prohibit discrimination based on race, color, sex, religion, national origin, age, and disability, as well as wage differences between men and women performing substantially equal work, also prohibit retaliation against individuals who oppose unlawful discrimination or participate in an employment discrimination proceeding.

In addition to the protections against retaliation that are included in all of the laws enforced by EEOC, the Americans with Disabilities Act (ADA) also protects individuals from coercion, intimidation, threat, harassment, or interference in their exercise of their own rights or their encouragement of someone else's exercise of rights granted by the ADA.

There are three main terms that are used to describe retaliation. Retaliation occurs when an employer, employment agency, or labor organization takes an adverse action against a covered individual because he or she engaged in a protected activity. These three terms are described below.

## Adverse Action

An adverse action is an action taken to try to keep someone from opposing a discriminatory practice, or from participating in an employment discrimination proceeding. Examples of adverse actions include:

- employment actions such as termination, refusal to hire, and denial of promotion,

- other actions affecting employment such as threats, unjustified negative evaluations, unjustified negative references, or increased surveillance, and

- any other action such as an assault or unfounded civil or criminal charges that are likely to deter reasonable people from pursuing their rights.

Adverse actions do not include petty slights and annoyances, such as stray negative comments in an otherwise positive or neutral evaluation, "snubbing" a colleague, or negative comments that are justified by an employee's poor work performance or history.

Even if the prior protected activity alleged wrongdoing by a different employer, retaliatory adverse actions are unlawful. For example, it is unlawful for a worker's current employer to retaliate against him for pursuing an EEO charge against a former employer.

Of course, employees are not excused from continuing to perform their jobs or follow their

## Need more information?

The law:

- Title VII of the Civil Rights Act

The regulations:

- 29 C.F.R Part 1604.11

Enforcement guidances and policy documents:

- EEOC Compliance Manual, Section 8, Retaliation (May 20, 1998)
- EEOC Compliance Manual, Section 2, Threshold Issues (May 12, 2000)

## You may also be interested in:

- How to File a Charge of Employment Discrimination
- Mediation at EEOC
- Training and Outreach
- Information for Small Employers

EX 13 (5)

| CHARGE OF DISCRIMINATION | ENTER CHARGE NUMBER |
|---|---|
| This form is affected by the Privacy Act of 1974 | ☐ FEPA 06020096(U) <br> ☐ EEOC 17CA000275 |
| Delaware Department of Labor | and EEOC (if applicable) |

| NAME (Indicate Mr., Mrs., Ms) | HOME TELEPHONE NO. (Include Area Code) |
|---|---|
| Roland Anderson | (302) 994-0914 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 113 Lloyd Street | Wilmington DE 19804  NCC | |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (if more than one, list below.)

| NAME | NO. OF EMPLOYEES OR MEMBERS 100+ | TELEPHONE NUMBER (incl. Area Code) |
|---|---|---|
| General Motors Corporation | | (713) 780-3056 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE |
|---|---|
| 1616 S. Voss, 10th Floor, Houston, TX 77057 ATT: Elmer C. Jackson, III, General Director, GM Employment Relations Center of Expertise | |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE |
|---|---|
| | |

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN  ☐ AGE

☒ RETALIATION  ☐ DISABILITY  ☐ OTHER (Specify)

DATE DISCRIMINATION TOOK PLACE
EARLIEST  6/1/1982
LATEST  12/19/2005
☒ CONTINUING ACTION

THE PARTICULARS ARE (if additional space is needed, attached extra sheet(s)):

Jurisdiction: Charging Party was employed with Respondent as a Body Shop/Production Technician since 1982 in Wilmington, DE, ending 10/82.

Charging Party's protected class: Retaliation

Adverse employment action: Terms and Conditions; Benefits

Brief statement of allegations: Charging Party alleges that R retaliated against him because of negative statements made regarding his job status during an EEOC investigation. Consequently, Charging Party claims that Respondent falsely stated that he was a temporary employee instead of a permanent employee which has affected his union benefits. Charging Party claims that he was laid off as an hourly employee and Respondent hired white workers without contacting him first. Thereafter, Charging Party filed a racial discrimination charge which resulted in false information given to EEOC about his job status as a temporary worker. Ultimately, Charging Party claims that this is further evidence that Respondent's information is a form of retaliation because it affect his current benefit status.

Respondent's explanation: Charging Party claims that Respondent has not given a reasonable explanation for placing him as a temporary worker after an investigation, while he previously worked as a hourly worker under a previous agreement.

Applicable law(s): Title VII of the Civil Rights Act of 1964, as amended; DE Discrimination in Employment Act

Comparator(s) or other specific reason(s) for alleging discrimination: Charging Party claims that Respondent's information during an EEOC investigation has revealed further adverse action in the form of retaliation because the information has negatively affected his union benefit status. Charging Party claims that during a legal proceeding, Dave Boyle, Respondent's EEOC Representative gave an affadavit that Charging Party was an hourly worker and under agreement acquired certain seniority rights under the previous collective bargaining agreement..

Additional information and verification of these facts are provided by the attached Verification.

| ☒ I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | SIGNATURE OF COMPLAINANT |
|---|---|
| | *Roland C. Anderson*   2-14-06 |
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |

(97)

EX B -(6)

A.   But EEOC response to a complaint clearly shows I was an hourly worker, acquired my 90 days and under a previous agreement, see proof Ex. B from affidavit of David L. Bull Ex. B.

These witnesses are willing to be a witness for trial/ pre-trial if need be.

Witness List

Brenda Sams – DOL – investigator for this charge NO. 06020096W

Dave I. Bull – His affidavit to show I was an hourly worker and not a temporary or terminated, but was laid off.

Julie Klein Cutler, administrator (DOL)

Dianna I. Schley – EEOC – Federal Investigator

Willie Demouchette – EEO Consultant (Exhibits from GM job history)

David Johnstone – consultant from General Motors (letter – position statement).

Members from ACLU

Terry Tydnall – party to GM

Nancy Smith, member from union

Dr. Olor

Thank you
Rofued P Anderson

Ate
ID -11-07

2

EX A(4)

1980's — Contract

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ROLAND C. ANDERSON,                    )
                                       )
        Plaintiff,                     )
                                       )
        v.                             )    C.A. No. 92-335-SLR
                                       )
GENERAL MOTORS, BOXWOOD                )
ROAD, WILMINGTON, DELAWARE             )
19804,                                 )
                                       )
        Defendant.                     )
                    AFFIDAVIT OF DAVID L. BULL

STATE OF DELAWARE       )
                        ) SS:
COUNTY OF NEW CASTLE    )

        On this ___16___ day of September 1992 personally appeared before

me the undersigned Notary Public, David L. Bull, who did depose and say:

        1.      I am an employee of General Motors Corporation at its Boxwood

Road plant, Wilmington, Delaware. I hold the position of supervisor, Equal

Employment Opportunity and, as such, I have investigated the subject matter of the

Complaint filed by Roland C. Anderson in the above-captioned civil action and the

same matter when it was before the Equal Employment Opportunity Commission. I am

authorized to make this Affidavit on behalf of Defendant, General Motors Corporation.

        2.      The records of General Motors show that Plaintiff was employed

as an hourly worker from August 31 to September 21, 1981, when he was laid off.

During this period of time, he acquired no seniority rights, because he was not

EX A (4)

P2

employed for 90 days, as required under the terms of the applicable Collective

Bargaining Agreement.   Plaintiff was rehired on June 25, 1982 and was again laid off

in October 1982.   Under the Agreement he acquired certain seniority rights, including a

right to be recalled to employment but these rights expired on a "time for time" basis.

Har ing been employed for only four months, Plaintiff's right to be recalled, as well as

any other seniority rights, expired four months after he was laid off, that is, by

February 1983.

   3.  G.M. has not hired any permanent employees for manufacturing

assembly work since 1987.  During this period of time, all persons recalled to work

were laid off employees who had seniority rights and a right to be recalled before

persons without such rights were considered for employment.  Telephone inquiries

concerning employment opportunities have received the response, "We are not issuing

applications nor do we expect any opportunities in the near future."

   4.  Separate and apart from the matter of recalling former employees

with seniority rights, there was a brief period when applications for temporary summer

employment were processed.  On May 13, 1992, 31 temporary employees were hired,

but, as it turned out, they only worked for two weeks before being laid off.  This took

place long after Plaintiff had filed his complaint with the E.E.O.C. on or about

December 27, 1991.  Former employees who still have seniority rights do not have a

right to recall to temporary summer employment.

   5.  G.M. has no record of receipt of a job application by Plaintiff

during 1991, or at any time after his seniority rights expired in 1983.  Plaintiff alleged,

Ex A (4)

before the E.E.O.C., that he sought employment from G.M. on June 5 and November 4, 1991 and was told that G.M. "was not hiring". If Plaintiff made these contacts on the dates indicated, he is correct in stating the response he would have received; as stated above, G.M. was not considering or accepting applications for new employment at that time. The list of former employees with seniority rights had not been exhausted and the Collective Bargaining Agreement barred consideration of any person, such as Plaintiff, who had no seniority rights.

6.    I was responsible for preparation and submission of G.M.'s response to Plaintiff's complaint as filed with the E.E.O.C.    Attached is a copy of that response.

7.    G.M.'s Wilmington plant was closed from Saturday, July 18 through Sunday, August 2, 1992. Plaintiff's complaint in this case was served on Defendant by ordinary mail. It appears to have been received during the time the plant was closed and there was no one on duty to give any attention to such mail. All of the mail received during the close down was processed following the reopening of the plant on Monday, August 3, 1992.

David L. Bull

Sworn to and subscribed before me the day and year first above written.

Notary Public
My Commission Expires: May, 1993

-3-



Ex 4(B)

*Seniority list 1981 - And On*
*Name was never place on it*

-24-93   VIP REPORT 5150                    S E N I O R I T Y
EXS-4345-HOURLY
UNIT ID - 1907                                    WILMINGTON

| CLOCK | NAME (started work at G.m.) | OSM SENIORITY DATE | OSM DATE | SOCIAL SECURITY |
|---|---|---|---|---|
| ¬ | S H A KLABE ¬ | 12-28-81 | 12-28-81 | 221-24- |
| ¬ | S R S NULTON, JR. | 12-28-81 | 12-28-81 | 172-46- |
| ¬ | S H S BURKINS | 03-01-82 | 03-01-82 | 199-42- |
| ¬ | S R A FARMER | 03-01-82 | 03-01-82 | 222-22- |
| ¬ | S R G JENKINS | 03-01-82 | 03-01-82 | 135-46- |
| ¬ | J R RIGBY | 03-02-82 | 03-02-82 | 179-46- |
| ¬ | S J J MCLAUGHLIN, JR. | 02-08-82 | 03-08-82 | 207-50- |
| ¬ | R P ALLEN | 03-15-82 | 03-15-82 | 222-30-: |
| ¬ | J R M CAMERON | 03-30-82 | 03-30-82 | 214-36- |
| ¬ | S C E KELLY | 04-19-82 | 04-19-82 | 185-0-6 |
| ¬ | S M F BOLIN | 04-23-82 | 04-21-82 | 221-6- |
| ¬ | S D X HOOK | 04-26-82 | 04-26-82 | 155-16-5 |
| ¬ | G MEYERS | 06-08-82 | 06-08-82 | 179-13-3 |
| ¬ | R BLALOCK | 03-14-82 | 06-14-82 | 222-53- |
| ¬ | R L BLALOCK | 06-14-82 | 06-14-82 | 221-46-4 |
| ¬ | F J DIETER | 06-14-82 | 06-14-82 | 169-33-7 |
| ¬ | J R FOSTER | 06-14-82 | 06-14-82 | 156-6-2 |
| ¬ | R J FRITZ | 06-14-82 | 06-14-82 | 221-4-9 |
| ¬ | R J PETRUCCI | 06-14-82 | 06-14-82 | 222-4- |
| ¬ | J G SOCKOLOSKY, JR. | 06-14-82 | 06-14-82 | 223-3- |
| ¬ | B R TINSLEY | 06-14-82 | 06-14-82 | 221-51- |
| ¬ | D R MARVIE | 06-15-82 | 06-15-82 | 222-46-7 |
| ¬ | I L O'NEAL | 06-21-82 | 06-21-82 | 222-24-9 |
| ¬ | C L DOUGHERTY | 06-22-82 | 06-22-82 | 221-38-8 |
| ¬ | J J KUBOYCIK | 06-22-82 | 06-22-82 | 225-38-24 |
| ¬ | R B LEWIS, JR | 06-22-82 | 06-22-82 | 222-56- |
| ¬ | A L NEEDAM | 06-22-82 | 06-22-82 | 213-84-24 |
| ¬ | R P TARONE | 06-22-82 | 06-22-82 | 221-48-35 |
| ¬ | S WASMO | 06-22-82 | 06-22-82 | 221-65- |
| ¬ | R D PECHIN | 06-23-82 | 06-23-82 | 166-36-64 |
| ¬ | R L DENSTEN | 06-28-82 | 06-28-82 | 167-33- |
| ¬ | R L LIVINGSTON | 06-28-82 | 06-28-82 | 197-33- |
| ¬ | T R JOHNSON | 07-02-82 | 07-02-82 | 217-56- |
| ¬ | D C RILEY | 07-12-82 | 07-12-82 | 222-96-75 |
| ¬ | T E YARN | 07-12-82 | 07-12-82 | 222-96- |
| ¬ | T L HERSINGER | 07-12-82 | 07-12-82 | 222-46-06 |
| ¬ | G A BIGGS | 07-14-82 | 07-14-82 | 222-42- |
| ¬ | R L BAINE | 07-15-82 | 07-15-82 | 221-89-9 |
| ¬ | D BUNSY | 07-15-82 | 07-15-82 | 222-56-5 |
| ¬ | D R HOLDREN | 07-15-82 | 07-15-82 | 222-56- |
| ¬ | M HUDSON | 07-15-82 | 07-15-82 | 221-16-2 |
| -20699 | R T RYLE 79 | 07-15-82 | 07-15-82 | 232-16-6 |
| ¬ | R S ESTEP | 07-16-82 | 07-16-82 | 222-56-3 |
| ¬ | T A HOWARD | 07-16-82 | 07-16-82 | |

P 8 of b (1)

## APPENDIX D

### INTERPRETATION OF PARAGRAPH (4) THRU (4c) AND PARAGRAPH (57)

**Rules for Computing Seniority of Employees Who Acquire Seniority by Working 90 Days Within Six Continuous Months, and Computing the Period Specified in Paragraph (4) thru (4c)**

1. Credit toward acquiring seniority will begin with the first day worked by the new employee and will include the subsequent days of that pay period.

2. Thereafter during six consecutive months until the employee acquires seniority the employee will receive credit for seven days for each pay period during which the employee works except that credit will not be given for any days the employee is on layoff.

3. No credit will be given for any pay period during which for any reason, the employee does not work except as provided in Paragraph (108) and in the case of the pay period in which the full week of Christmas holidays or the Independence Week Shutdown falls, provided the employee would otherwise have been scheduled to work.

4. Unless employees are at work on the 90th day of their accumulated credited period, they must work another day within their probationary period to acquire seniority. If the 90th day of their accumulated credited period falls on a holiday or an Independence Week Shutdown Day, the employees will be considered as having seniority as of the holiday or the Independence Week Shutdown Day. If the 90th day of their accumulated credited period falls on their vacation pay eligibility date, the employees will be con-

sidered as having seniority as of the vacation pay eligibility date.

5. In the event temporary employees are summoned and report for jury duty as prescribed by applicable law during the period of six continuous months preceding the date they acquire seniority pursuant to Paragraph (57), the employees' seniority when acquired will be adjusted to give the employees credit for seven additional days for each week in the period in which they did not work and during which jury duty was performed. The employees must furnish evidence that the jury duty was performed in order to receive seniority credit in accordance with this provision.

[See Par. (54)(a),(54)(e),(107)]
[See Par. (137)(c)(2),(203)]
[See App. A]

182

183

*10 of 10*

employees in the group engaged in similar work, as far as practicable. Information concerning equalization of hours status will be openly displayed in the department in such a manner that the employees involved may check their standing. This provision shall not interfere with any mutually satisfactory local practice now in effect.

[See Par. (8),(121),(141)(a)-(c)]
[See Memo-Overtime]
[See Doc. 7,Sec.VI;83;111]

(72) Employees who have been incapacitated at their regular work by injury or compensable occupational disease while employed by the Corporation, will be employed in other work on jobs that are operating in the plant which they can do without regard to any seniority provisions of this Agreement, except that such employees may not displace employees with longer seniority, provided, however, that by written agreement between local Management and Shop Committee, such employees may be placed or retained on jobs they can do without regard to seniority rules. Each three months the name, job classification and seniority date of employees covered by such agreement will be furnished to the Chairperson of the Shop Committee.

[See Par. (59),(62),(63),(108),(195)]

(73) The employment of the following persons shall not be governed by seniority rules: students and graduates of technical or professional schools and special employees receiving training as a part of a formal training course.

[See Par. (56),(57),(58),(59)]

(73a) Seniority status of employees who have completed or discontinued cooperative training courses and who are assigned to hourly rated jobs in the bargaining unit for other than training purposes shall be as follows:

55

say on page 11 of their motion - to for the fifth time since his employment ended Plaintiff seeks to hold G.M liable for laying him off. Your Honor this is not the case Under 05-877 I file retaliation action of the folowing found by D.O.L, copy attach,

See EEOC - v. U.S Steel Corp 921 F 2d 489 492 - (3d cie 1990) quoting Hart Steel Co. V Rail Road Supply Co. 244 U.S. 294, 37s CT 506 - 61 LSD 1148 (1971) Res Judicatos to avoid the expense of multiple lawsuits in realiance on judicial action by memorizing the possibility in consistant decisions.

Your Honor G.M is still trying to mislead this court to say   on page 12, 18 parg Plaintiff did not contact G.M to see if they were hiring at that time and did not request or submit an application. Please read page 2 of their motion clearly it was recorded that I indeed called. G.M truthfully answered their phone and by their own omittion said they were not accepting applications.

Your Honor, clearly on it face G.M violated prime facie case of discrimination based on race, age and any other protected charactoristic. To state a claim plaintiff is required to $S\,HO$ (1) He is a member of the protected class, (2) He applied for and was qualified for a position for which the employer was seeking applicants.

Your G.M states on page 13 – clearly is giving a false statement about me calling – see page 13 is where G.M claim again - First after Plaintiff learned in April 2005 was hiring new employee (further proof G.M was hiring). G.M claim Plaintiff made no attempt to seek employment at G.M (is a lie). Again read page 2 of their motion (I was told G.M was not hiring) G.M in violation R. 3.3/ R 3.4.

Third circuit has previously held as long as the Plaintiff made every reasonable attempt to convey his interest in the job to the employer. See EEOC V. Metal Serv.,  Co workers. 892 F $2^d$ 341 (3d CIR 1990) Your Honor, please compare on page 2 and page 13, clearly I try and by their own omission on page 2 I did call and was told G.M was not hiring, but now their motion clearly says that thy were hiring. I'm entitled to judgment in matter of law. Accord to page 2 of their motion G.M claim I did call, (page 2). G.M truthfully answered Plaintiff's telephone inquiry – (truly G.M is mislead on page 13) of their motion/ Please compare G.M violation R. 3.3 R 3.4 I am entitled rule R56 -/ judgment in motion of law.

G.M omitted under small print – In late 2006 seven (7) employee were transferred to Wilmington Facility from plants of which was divesting – see Affidavit of Diane   aham (Attach here to AS EX. Hitit (3)

But on page G.M clearly states no new employee at the facility in 2004, 2005, 2006 truly in misleading – by their own omission of hiring during that time – to me and this court. Also G.M in fact even though he had allegedly (contacted) G.M on prior occasions seeking employment, he failed to check to see if G.M was actually hiring in April 2005 (page 13).

But, on page 2, G.M clearly says, - First G.M hired No New Employee At This Facility. Second, G.M truthfully answered Plaintiff's telephone inquiry and confirmed that it was Not Accepting Applications At That Time. (2004, 2005, or 2006 at that time)
Truly I called and was told the same thing prior. G.M violation R 3.4/ R 3.3 and EEOC V. Metal Serv.  Co 892 –F 2d 341 (3d CIR 1990)

Third circuit has previously held that a person formally apply for a job opening will not BAR – A title VII Plaintiff from establishing a prime FACIE claim of discriminatory hiring. Clear G.M violates this claim under TILE VII. I am entitled to judgment in matter of law – see their

Put directly, plaintiff cannot establish a prima facie case of discrimination based on race, age or any other protected characteristic. To state a claim, plaintiff is required to show: (1) he is a member of a protected class; (2) he applied for and was qualified for a position for which the employer was seeking applicants; (3) despite his qualifications, he was rejected; and (4) after he was rejected, the position remained open and GM continued to seek applicants with plaintiff's qualifications. *Texas Dep't Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Hoechstetter v. City of Pittsburgh*, 248 F. Supp. 2d 407, 409-10 (W.D. Pa. 2003); *Iadimarco v. Runyon*, 190 F.3d 151, 160-61 (3d Cir. 1999).

Plaintiff cannot establish the second, third or fourth of these elements. Plaintiff did not apply for and was not qualified for any open position at GM; he was not rejected for any position for which GM was seeking applicants and no "position" remained open after plaintiff was rejected.

First, after plaintiff allegedly learned in April 2005 GM was hiring new employees plaintiff made no attempt to seek employment at GM. Plaintiff made no calls to GM inquiring about employment, he did not request or complete an application and no manager or supervisor denied him the opportunity to apply for employment at GM. The Third Circuit has previously held that the failure to formally apply for a job opening will not bar a Title VII plaintiff from establishing a prima facie claim of discriminatory hiring, as long as the plaintiff made every reasonable attempt to convey his interest in the job to the employer. *EEOC v. Metal Serv. Co.*, 892 F.2d 341 (3d Cir. 1990). However, here, plaintiff made no attempt to apply at GM after his chance encounter with a GM employee at the liquor store. In fact, even though he had allegedly contacted GM on prior occasions seeking employment, he failed to check to see if GM was actually hiring in April 2005.



simply wanted to know GM's hiring status because he was considering looking for part-time work.

GM did not discriminate against plaintiff. First, GM hired no new employees at this facility in 2004, 2005 or 2006.[1]  Second, GM truthfully answered plaintiff's ⟵——— telephone inquiry and confirmed that it was not accepting applications at that time. Third, plaintiff was not qualified for employment at GM as he is not released to return to the open labor market. Thus, plaintiff's claims should be dismissed as no prima facie case exists and GM had a legitimate, nondiscriminatory reason for its actions.

Plaintiff also alleges (in the lawsuit that was consolidated with the present case) that GM's statement to the Equal Employment Opportunity Commission ("EEOC") that he was a temporary worker back in 1982 is somehow retaliatory. Specifically, plaintiff alleges this statement somehow adversely affected his GM benefits. This allegation is unfounded as plaintiff has received no GM benefits since 1984 and, in any case, it is insufficient to establish a retaliation claim. Further, plaintiff's claims regarding his termination and/or employment status were decided by this Court's prior Orders. ⟵

GM did not discriminate against plaintiff, and no evidence establishes GM's explanation for not hiring plaintiff was pretextual. Also, plaintiff's complaints about his prior employment were dismissed by this Court and every administrative body to review this case over the past twenty (20) years. Therefore, GM is entitled to summary judgment and/or dismissal of all of plaintiff's claims. GM also seeks its costs and fees associated with defending this matter. Further, plaintiff should be prohibited from filing

---

[1] In late 2006, seven (7) employees were transferred to the Wilmington facility from plants of ⟵ which GM was divesting. See Affidavit of Diane Graham attached hereto as Exhibit 3.

own omission page 13 and page 2) Your Honor I can get a letter for part time work.

G.M states finally G.M was neither advertising for, nor hiring for hourly positions.

But on page 13, G.M omitted G.M was indeed hiring- page G.M says (First after Plaintiff allegedly learne in April 2005 G.M was hiring new employees Plaintiff. Your Honor, G.M in violation R. 3.4/ R3.3 – see page 13 – G.M is being untruly) motion summary judgment.

Your Honor, how could I know if I didn't call?
Argument
A). Summary Judgment Standard
    Summary Judgment is appropriate is viewing the records is the light most favorable to the neon-moving party, Moving party is entitled to judgment as matter of law, R. Civ. P 56 (c) An issue is genuine if given the evidence. The jury could return a verdict in favor of the non moving party. See Nannay V. Rowa- College 101F. Sapp 2d 272, 281, (D, N, J 2000) Citing Anderson V, Liberty Lobby, INC. 477 U.S. 242, 248 (1986) under govern law it might affect the outcome of the case. See Nannay 101 F Supp – 2d at 281. The burden placed upon the novant for summary judgment is to show that the ultimate of proof at trail. Celotey Coup V. Catrett 477 U.S. 317, 322 (1986) Judgment should be granted. See Poole V. University of Delaware, 695 F. Supp 171, 171- 72c  D. Del 1988) *for plaintiff* As *evidence* s Hoan.

Answer to page 14
G.M claim/ states even if Plaintiff could establish a prime facie case – he produced no evidence that G.M legitimate reason for not hiring him were pretextual.

And then – go on to say – G.M has a legitimate nondiscriminatory reason for not hiring Plaintiff – G.M was not hiring new hourly employees at that facility/ again mislead. See on page 13. G.M was hiring in April 2005 and on page 2 Foot Note/ clearly states in late 2006. Seven (7) employees were transferred to the plant from plant in which was divesting. See affidavit of Diane Graham Herets as ex 3. (Evidence shows G.M doesn't meets burden under the McDonnell Douglas V. Green, 411 U.S, 792, 93S, CT 1817, 36L, Ed. 2d 668 – (1973) – Under the

EX 4 (A)

Anderson v. General Motors Corporation
Roland C. Anderson

38

1  correct?
2      A. Yes, April the 15th, 2005.
3      Q. Sir, is it your testimony that these documents
4  were changed or --
5      A. Altered, yes.
6      Q. In fact, you were given copies of these documents
7  when you filed prior lawsuits, weren't you?
8      A. No. That's the -- you asked me the question.
9  I'm going to answer your question, sir. That's the
10  way -- I know where you are coming from.
11          But I'm going to tell you, and you are
12  putting it the same way, category with them, these
13  documents, when I prior filed these suits, there is
14  affidavits sent to Judge Farnan from Dave Bull clearly
15  under the circumstances states that I was an hour worker.
16  You understand me?
17          So, therefore, none of this stuff was in
18  there until April the 15th, after the EBOC did their
19  investigation, and they found that I was listed as
20  terminated, I was listed as they turn around and said I
21  was a temporary employee.
22      Q. Sir --
23      A. I'm just saying --
24      Q. Let's stop for a minute because I don't want you

39

1  to commit perjury.
2      A. I'm not perjury.
3      Q. You understand that you filed prior lawsuits,
4  correct?
5      A. That's correct.
6      Q. You understand that you have lost every one of
7  those lawsuits, right?
8      A. Because of the time frame, sir.
9      Q. Yes or no?
10      A. Yes, because of the time frame.
11      Q. You also appealed these decisions through the
12  union, correct?
13      A. Yeah.
14      Q. And you understand that there are written
15  decisions from not only the local union, but the National
16  Union and the NLRB? You understand that, correct?
17      A. Yes, but that --
18      Q. Yes, sir. Do you understand that?
19      A. Yes, I do understand that.
20      Q. Do you understand because you commented on the
21  record in those cases about the very documents that you
22  are speaking, so is it your testimony under oath to this
23  Court that the first time you saw those documents was
24  April the 15th, 2005? Yes or no?

40

1      A. Listen to me. Let me explain. I'm going to say
2  the first time I've seen the documents that they said I
3  was terminated and laid off was around -- after the
4  investigation from EEOC.
5          Prior cases that you are referring to is
6  stated from Dave Bull that I was an hourly worker. I was
7  laid off. That's what I'm trying to tell you.
8          And the reason why they said that those
9  cases were lost because it was time frame. But the
10  information that you sent to them also reveals that your
11  situation, your staff, your members committed perjury
12  because the information that you sent them is incorrect
13  from the information that Dave Bull and the records
14  reflect that I was an hourly worker. Okay?
15      Q. Sir, what does it mean to be an hourly worker?
16      A. Hourly worker means that you get the full
17  benefits of regular worker, hourly worker. Temporary
18  workers don't get the benefits. That's as simple as
19  that.
20      Q. That's your definition?
21      A. No. That's the records from the union.
22      Q. Sir, I'm trying to ask a simple question, and
23  apparently we are going to go a different direction. I
24  went to make sure that this record is clear. You have a

41

1  packet of documents that you brought here today, correct?
2      A. That's correct.
3      Q. I would like you to go into that packet and pull
4  out the documents that you say you didn't see until
5  April 15th of 2005.
6      A. Okay. Okay. First --
7      Q. Sir, please pull out the records you say you
8  didn't see until 2005.
9      A. Okay. Cool. Here it is right here. September
10  2005 -- can I read something for the record, please?
11      Q. She has to mark this and it is going to become an
12  exhibit.
13      A. Right. Thank you.
14      Q. She will give you back a copy before you leave.
15      A. Thank you.
16      Q. Are there any other documents in here you allege
17  that you didn't know about until April of 2005?
18      A. April -- September 8th, 2005. That's what was
19  investigated and that's what prevailed, the retaliation.
20  That's when the retaliation came into effect, that
21  information right there.
22          First of all, let me say something to you,
23  sir. The one I was referring to you from Dave Bull
24  clearly states from -- to the records, which is going to

11 (Pages 38 to 41)

I would like to clarify my answer to the attorney's question on page 37.

Q.     So all of this last part that I read also because of my age to believe the Defendant listed me as terminated and this retaliatory stuff deals with your lay-off back in 1982?

A.     That's correct.

This was just one part of retaliation reasons I was lay-off out of seniority and race, but the records did not reflect the terminated part, which was back in September of 2005. G.M. listed me as temporary and terminated.

Their part of retaliatory reason is that it was just retaliatory recall rights and seniority only. No new charge of retaliatory of terminated and temporary. See charges back in 1982 for recall seniority.

The attorney mislead and knowingly new terminated was not mentioned until September 2005. See evidence from EEOC attached.

I was just answering to the second part of the retaliatory stuff back in 1982, record show no termination back in 1982. See record of former suit attached plus no where until September 2005. Investigation by EEOC of me being listed as terminated or temporary employee. As you can see on page 10, para. 37 will explain and show.

Q.     By G.M. and those document that you alleged should have said one thing, should have said lay-off, but said terminated were created back in 1982?

Your Honor clearly G.M. is trying again to mislead in violation of Rule 3.4. Also fail to obey this Court rules and law in 1982 deals with 06-669 was prohibited order dated. See copy of order.

A.     Clearly defense for my answer which states the following, page. 10 para. 37. Well let me get this straight. I know where you are coming from with that. I am going to say this to you. I have good documents here. This is a retaliation situation. I didn't know anything about it until the April 15th investigation from the EEOC, this pops up.

Q.     Sir?

A.     Otherwise I would have done something about that a long time ago. Your Honor, G.M. can not violate the law, see R. 3.9.

McDonnell Douglas Framework to defeat summary judgment when the Plaintiff answers the Defendant for discriminatory reason for this action

Third circuit has previously held, as long as the Plaintiff made every reasonable attempt to convey his interest in the job to the employer. EEOC V. Metal Serv.  Co 892 F2d 341 (3d cir 1990) Your Honor, it is clear on page 2 of theit motion I was told G.M was not hiring – 2004, 2005, 2006. But on page 13 and page 2 G/M does hir new employees. In violation R 3.3/ R 3.4/ page 2 Foot Note – please read and compareG.M was hiring in 2005, see page 13 of their motion.

Prime facie case with legitimate decimatory reasons for it's action, the Plaintiff must point to some evidence, direct circumstantial, from which a face finder could reasonably either 1) disbelieve the employer's articulated legitimate reasons.
1. Answer – Your Honor, as you can see by the evidence shown G.M is untruthful about my job status and the hiring status. By evidence shown, violation R 3.3 and R 3.4
2. Clearly G.M in violation discriminatory reasons was more likely than not. A motivating or determinative cause of the employers' action had accued – by evidence shown and Dave Bull's affidavit to show proof I was an hourly worker/ And Union contract (73) Attach it was not required, the reason I was a student or graduate of Technical School . G.M  never mention this contract. Because motivating or determinative cause of employers action. Fuente V. Penskie 32 F, 3d 759, 764 (3d cir 1994) – There is plenty of evidence shown. Also of the finding of D.O.L Attach.

G.M stats during the relevant time no new employees were hired. (Again G.M is trying to mislead this court see page 13) G.M omitted G/M was indeed hiring and on page 2 foot note – violation of R 3.4, 3.3 – R 1.3 scoop of the rules. In 2005 pg 13.

Diane Graham clearly omitted 7 employees were transferred on page 2 also G..M omitted hiring them in 2005 of April see page 13. Your Honor, I request producing of records, but was refused by G.m I am entitled to R. 56 (c) Also R.26 for failure to gave producing under R 45 – R 34.  Further it is my right to request or have it repel for G.M to produce.

There is proof of admissible evidence to rebutle G.M's legitimate; discriminatory reason for not hiring Plaintiff – G.M indeed hired employees during April 2005. And for the false statement, - evidence shown by the Plaintiff I'm entitled by law or R. 56 (c)

## CONCLUSION

Plaintiff is entitled to summary judgment R, 56 (c) and judgment in matter of law their violation, R. 3.4,- R 3.3 – for giving false statement about my job status with Plaintiff evidence from record from Dave Bull Affidavit as well, under Case No.: 05-877.

Also, union contract (73) – the employment of the following person shall not be governed by Seniority rules – students and graduates, copy attach. G.M never mentioned to this court- I am entitled to summary judgment R. 56.

See also under contract, rules for computing seniority of employees who acquire seniority by working 90 days within 6 months continuously. And computing the period specified in paragraph (4) – (4C). (4) clearly states, unless employees at work on the 90 days of the accumulated credited period EEOC for G.M which David Bull and he was correct, In deed acquire my seniority affidavits under oath. Evidence attach

G.M doesn't have a balance of race and this is one of the reasons G.M never produced records at Plaintiff's request – surly I'm entitled too Rule 26 – of disco

Thus as Plaintiff's in entitle to judgment in it favor and court costs and fees associated with complaint and – it was the D.O.L finding under protection class see the finding attach if any fee it should go against D.O.L But this case     be against G.M for false statement  violation of R 3.4- R 3.3 and the incorporation under R 26. Failure to discovery or further relief as this court deems proper. This termination is on my record which is clearly untrue – and does have affects on my life now and in the future. I would like G/M to list me as lay-off status, Also Affect my Credit As well, please Have G,m Remove the Temporary An the Termination off – my Record which is clearly UNTRUE (AN FALSE) As stated – From Union R.73 As well. (And THE Evidence S/town),

*P*/*F* 302-654-4906

*EXB* -(5)



STATE OF DELAWARE DEPARTMENT OF LABOR
DIVISION OF INDUSTRIAL AFFAIRS
DIVISION OF INDUSTRIAL AFFAIRS
4425 NORTH MARKET STREET
WILMINGTON, DE 19802
(302) 761-8200/ FAX: (302) 761-6601

## *PRIVACY ACT STATEMENT*

Dear Charging Party:

1.   Please be advised that the information you have provided comes under the provisions of the Privacy Act of 1974, Public Law 93-579.

2.   The authority for requesting the personal information contained herein are provided in 42 U.S.C. 2000e(9), 29 U.S.C. 201, 29 U.S.C. 621; and 19 Del. C. § 712(c).

3.   The principal purpose of obtaining this information is to complete the Charge of Discrimination which will be verified by the Charging Party and served upon the Respondent. In some instances, witnesses' sworn statements may become relevant to determining the Charge of Discrimination.

4.   These forms are used to initiate and investigate the Charge of Discrimination under the laws and to impeach or substantiate a witness's testimony.

5.   Completion of the Verified Charge of Discrimination form is mandatory to initiate and process a Charge of Discrimination. Providing additional information on the verification form is optional. Failure to provide additional information has no effect on Department of Labor's ability to file and process the Charge of Discrimination.

EXB (6)

AO88 (DE Rev. 01/07) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### DISTRICT OF DELAWARE

Roland R. Anderson

v.

General Motors Corp.

**SUBPOENA IN A CIVIL CASE**

Case Number: CA. O8-0877

TO: Michael Williame Michael Berkill
300 Delaware Avenue, Suite 1210
Wil. Del. 19801

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

List of All Employee Hire From 1982 cntil Oct. 04, that there Race
(To) united State District court / At 844 N. King str.
Wil. Del. 19801 / Time 9:00 q 3:00 — Date Oct 31, 07

| PLACE | DATE AND TIME |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| DEPUTY Clerk | |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

**PETER T. DALLEO**    (302) 573-6170

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

If action is pending in district other than district of issuance, state district under case number.

EXG-(1)

AO88 (DE Rev. 01/07) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

### DISTRICT OF DELAWARE

Roland E. Anderson

V.

General Motors Corp.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] C.A. 05-0877

TO: Michael William E Michael Busfell
300 Delaware Avenue, Suite 1210
Wil, Del, 19801

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
List of All Employee Hire From 1982 until Oct. 04, (And these place)

(To) United State District court / At 844 N. King Str.
Wil. Del. 19801 / Time 8:00 @ 3:00 — Date Oct 31, 07

| PLACE | DATE AND TIME |
|---|---|
| | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| DEPUTY Clerk | |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

**PETER T. DALLEO**      (302) 573-6170

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

11



SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Michael Wayne MW, Bushell
300 DOC, Avenue Suite 210
Wilmington, DE, 19804

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X _Jeanne E. Byler_  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name )
Jeanne E. Byler  C. Date of Delivery 10/26/07

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

WILMINGTON DE
DISBURSING STA
OCT 26 2007
19805

3. Service Type
   ☒ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? ( Extra Fee )    ☐ Yes

2. Article Number
   (Transfer from service label)
   7007 1490 0002 7860 7565

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

R.3.4

...se to offer evidence, other than the testimony of a defendant in a criminal ...er, that the lawyer reasonably believes is false.

...) A lawyer who represents a client in an adjudicative proceeding and who ...ows that a person intends to engage, is engaging or has engaged in criminal ...raudulent conduct related to the proceeding shall take reasonable remedial ...sures, including, if necessary, disclosure to the tribunal.

...) The duties stated in paragraph (a) and (b) continue to the conclusion of ...proceeding, and apply even if compliance requires disclosure of information ...rwise protected by Rule 1.6.

...) In an ex parte proceeding, a lawyer shall inform the tribunal of all ...erial facts known to the lawyer which will enable the tribunal to make an ...rmed decision, whether or not the facts are adverse.

## COMMENT

This Rule governs the conduct of a lawyer ...o is representing a client in the proceedings ...tribunal. See Rule 1.0(m) for the definition ...bunal." It also applies when the lawyer is ...resenting a client in an ancillary proceeding ...cted pursuant to the tribunal's adjudica-...authority, such as a deposition. Thus, for ...ple, paragraph (a)(3) requires a lawyer to ...e reasonable remedial measures if the law-...comes to know that a client who is testifying ...a deposition has offered evidence that is

This Rule sets forth the special duties of ...ers as officers of the court to avoid conduct ...undermines the integrity of the adjudica-...the process. A lawyer acting as an advocate in ...adjudicative proceeding has an obligation to ...sent the client's case with persuasive force. ...formance of that duty while maintaining ...fidences of the client, however, is qualified ...the advocate's duty of candor to the tribunal. ...quently, although a lawyer in an adver-...proceeding is not required to present an ...artial exposition of the law or to vouch for ...evidence submitted in a cause, the lawyer ...not allow the tribunal to be misled by ...statements of law or fact or evidence that ...lawyer knows to be false.

Representations by a lawyer — An advo-...responsible for pleadings and other ...prepared for litigation, but is usu-...ed to have personal knowledge of ...ted therein, for litigation docu-...ly present assertions by the cli-...ents on the client's behalf and ...the lawyer. Compare Rule 3.1 ...tion purporting to be on the ...knowledge, as in an affidavit by ...lawyer's

...statement in open court may ...the lawyer knows ...it to be true or ...inquiry. There ...to make a ...

1.2(d), see the Comment to that Rule. See also the comment to Rule 8.4(b).

[4] Legal Argument. — Legal argument based on a knowingly false representation of law constitutes dishonesty toward the tribunal. A lawyer is not required to make a disinterested exposition of the law, but must recognize the existence of pertinent legal authorities. Furthermore, as stated in paragraph (a)(2), an advocate has a duty to disclose directly adverse authority in the controlling jurisdiction that has not been disclosed by the opposing party. The underlying concept is that legal argument is a discussion seeking to determine the legal premises properly applicable to the case.

[5] Offering Evidence. — Paragraph (a)(3) requires that the lawyer refuse to offer evidence that the lawyer knows to be false, regardless of the client's wishes. This duty is premised on the lawyer's obligation as an officer of the court to prevent the trier of fact from being misled by false evidence. A lawyer does not violate this Rule if the lawyer offers the evidence for the purpose of establishing its falsity.

[6] If a lawyer knows that the client intends to testify falsely or wants the lawyer to introduce false evidence, the lawyer should seek to persuade the client that the evidence should not be offered. If the persuasion is ineffective and the lawyer continues to represent the client, the lawyer must refuse to offer the false evidence. If only a portion of a witness's testimony will be false, the lawyer may call the witness to testify but may not elicit or otherwise permit the witness to present the testimony that the lawyer knows is false.

[7] The duties stated in paragraphs (a) and (b) apply to all lawyers, including defense coun-...

...however, courts have required counsel to present the accused as a witness or to give a narrative statement if the accused so desires, even if counsel knows that the testimony or statement will be false. The obligation of the ...lawyers under the Rules of Professional ...it is predicated upon such requirements. See ...Comment [9].

[8] The prohibition against offering false ev-



**October 5, 2007**

ROLAND C ANDERSON
113 LLOYD STREET
WILMINGTON, DE 198042821

**GM Benefits & Services Center**
gmbenefits.com
1-800-489-4646
**International Access**
Dial AT&T Direct® Access Code, then
877-833-9900
**TTY Service for Hearing or Speech Impaired**
1-877-347-5225

RE:  Hourly-Rate Employees Pension Plan "the Plan"

Dear ROLAND C ANDERSON:

This letter serves as verification that our records indicate your total credited service under the Hourly-Rate Employees Pension Plan "the Plan" is 0.5 years of service. If you believe the information provided in this letter is not valid, you may call the GM Benefits & Services Center for a Credited Service Audit Request form. Details regarding the method used to calculate credited service can be found in your Summary Plan Description.

If you have any questions, please call the GM Benefits & Services Center toll-free at 1-800-489-4646, Monday through Friday, between 7:30 a.m. and 6:00 p.m. Eastern Time zone, to speak with a Customer Service Associate. From outside the U.S., dial your country's toll-free AT&T Direct® access number then enter 877-833-9900. In the U.S., call 1-800-331-1140 to obtain AT&T Direct access numbers. From anywhere in the world, access numbers are available online at www.att.com/traveler or from your local operator.

Sincerely,

**GM Benefits & Services Center**
P.O. Box 770003
Cincinnati, OH 45277-0070



seniority equal to the amount of seniority which the employee had at the date of such seniority break.

(h) An employee whose seniority is broken under the provisions of Paragraphs (64)(a), (64)(b), (64)(c), (64)(d), (111)(a) or (111)(b) will, in the event the employee's seniority is reinstated, be reimbursed for any contributions made pursuant to Section 6 of the Supplemental Agreements (Life and Disability Benefits Program and Health Care Program) (Exhibits B and C) which the Corporation would have made, in accordance with the employee's revised status, under the applicable provisions of the Life and Disability Benefits Program and the Health Care Program (Exhibits B, B-1, C and C-1). An employee who is assessed a disciplinary layoff which is subsequently reduced or rescinded, will be reimbursed for any contributions made pursuant to the Supplemental Agreements (Life and Disability Benefits Program and Health Care Program) (Exhibits B, B-1, C and C-1) which the Corporation would have made, in accordance with the employee's revised status, under the applicable provisions of the Life and Disability Benefits Program and the Health Care Program (Exhibits B, B-1, C and C-1).

Layoff and Rehiring Procedure

(64) For temporary reductions in production not exceeding four weeks, the work week may be reduced before any employees are laid off, unless otherwise extended by local plant agreement.

[See Par (64)(a)…(77)]
[See App. K]
[See Sch. D]

(65) (a) For extended periods of reduced production exceeding four weeks the work week will be reduced and/or employees will be laid off to comply with Paragraph (c) below unless otherwise extended by local plant agreement.

[See Par 121)(140)…(65) and (140b)]
[See App. K]

52

(65) (b) Both parties agree that it is desirable to give employees high annual earnings. It is recognized and agreed that there are times when production and tooling require overtime and other times when not enough work is available to give all employees with seniority a full week's work. It is mutually recognized that to operate a plant at a schedule which gives employees less than thirty-two (32) hours per week for more than a month is unsatisfactory to both employees and the Corporation and reductions below this level are only justified by special conditions.

[See Par. (121)(140)…(140a)(140b)]
[See Sch-Exhibit D]

(65) (c) Operation of a plant or any part thereof on a schedule of employment of less than an average of twenty-four (24) hours per week for a period of more than two consecutive weeks or less than an average of thirty-two (32) hours per week for a period of more than four consecutive weeks shall only be by local written agreement with the Shop Committee.

[See Par. (121)(140)(140a)(140b)]

(66) (d) For the purpose of Paragraph (65) and this Paragraph (66), a week in which employees are not scheduled to work shall not be taken into account. In the event a full week of five holidays occurs during the Christmas holiday period, the hours paid as holiday pay in such a week shall be counted as scheduled hours of work. Hours paid as holiday pay in a week in which work is scheduled shall also be counted as scheduled hours of work.

[See Par (66)/(230c)]
[See Sch. 30]

(57) Employees will be laid off and rehired in accordance with local seniority agreements.

(68) The Management of each plant will, whenever possible, give at least twenty-four (24) hours' notice prior to layoff to the employees affected.

53

employees in the group engaged in similar work, as far as practicable. Information concerning equalization of hours status will be openly displayed in the department in such a manner that the employees involved may check their standing. This provision shall not interfere with any mutually satisfactory local practice now in effect.

[See Par. (3),(121),(141)(a)-(e)]
[See Memo-Overtime]
[See Doc. 7,Sec.VI.83;11.]

(72) Employees who have been incapacitated at their regular work by injury or compensable occupational disease while employed by the Corporation, will be employed in other work on jobs that are operating in the plant which they can do without regard to any seniority provisions of this Agreement, except that such employees may not displace employees with longer seniority, provided, however, that by written agreement between local Management and Shop Committee, such employees may be placed or remained on jobs they can do without regard to seniority rules. Each three months the name, job classification and seniority date of employees covered by such agreement will be furnished to the Chairperson of the Shop Committee.

[See Par. (59),(62),(63),(138),(195)]

(73) The employment of the following persons shall not be governed by seniority rules: students and graduates of technical or professional schools and special employees receiving training as a part of a formal training course.

[See Par. (56),(97),(58),(59)]

(73a) Seniority status of employees who have completed or discontinued cooperative training courses and who are assigned to hourly rated jobs in the bargaining unit for other than training purposes shall be as follows:

55

Respectfully Submitted
Thank You Roland C. Anderson
113 Loyd St. Wilmington Delaware 19804

**Center Of Services – District Court of Delaware, 19801**
**Michael Basentell**
**Margaret F. England**                    *Roland O. Anderson*
**300 Dol Ave. Suite 1210**
**Wilmington, Delaware, 19801**

Date 2-26-08